```
 1                BEFORE THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA
 2

 3   UNITED STATES OF AMERICA,        .
                                      .  Case Number 21-cr-552
 4            Plaintiff,              .
                                      .
 5        vs.                         .
                                      .  Washington, D.C.
 6   KENNETH JOSEPH OWEN THOMAS,      .  May 23, 2023
                                      .  9:13 a.m.
 7            Defendant.              .
     - - - - - - - - - - - - - - - -

 8

 9              TRANSCRIPT OF JURY TRIAL, VOLUME 7
           BEFORE THE HONORABLE DABNEY L. FRIEDRICH
10                UNITED STATES DISTRICT JUDGE

11

12   APPEARANCES:

13   For the United States:      SAMANTHA MILLER, AUSA
                                 SEAN MCCAULEY, AUSA
14                               United States Attorney's Office
                                 601 D Street Northwest
15                               Washington, D.C. 20579

16   For the Defendant:          JOHN PIERCE, ESQ.
                                 ROGER ROOTS, ESQ.
17                               John Pierce Law P.C.
                                 21550 Oxnard Street
18                               Third Floor, OMB #172
                                 Woodland Hills, California 91367

19

20

21   Official Court Reporter:    SARA A. WICK, RPR, CRR
                                 333 Constitution Avenue Northwest
22                               Room 4704-B
                                 Washington, D.C. 20001
23                               202-354-3284

24

25   Proceedings recorded by stenotype shorthand.
     Transcript produced by computer-aided transcription.
```

                    P R O C E E D I N G S

1          (Jury not present.)

2          COURTROOM DEPUTY:  Your Honor, we are in Criminal

3   Action 21-552, the United States of America versus Kenneth

4   Thomas.

5      If I can have the parties please approach the podium and

6   identify yourselves for the record, starting with the

7   government.

8          MS. MILLER:  Good morning, Your Honor.  Samantha

9   Miller on behalf of the United States, joined by Sean McCauley

10  and Brianna Rummens.

11         THE COURT:  Good morning.

12         MR. PIERCE:  John Pierce on behalf of Kenneth Joseph

13  Thomas, who is present, along with co-counsel Roger Roots.

14         THE COURT:  Good morning, everyone.

15     I take it there were no objections to the final final jury

16  instructions.  I know we heard from the government.

17     Anything from the defense?

18         MR. ROOTS:  No objections.

19         THE COURT:  So I just want to make sure you all go

20  through the exhibits and make sure everyone's on the same page

21  and you sign off on them.  Mr. Hopkins will get your signatures.

22     We don't have all the jury in there just yet.

23     Any other issues we need to address?  Are you all going to

24  be close to the courthouse for notes and --

 1            MS. MILLER:  (Nodded head.)

 2            MR. ROOTS:  (Nodded head.)

 3            THE COURT:  All right.  The jury should be in by 9:30.

 4    They will start deliberating.  Do you all want to be here or

 5    just have them go in the jury room and start deliberating?  Do

 6    you want me to excuse them to go back there?

 7        I was just going to have them start.

 8            MS. MILLER:  We don't have a preference, Your Honor.

 9            MR. ROOTS:  I don't think we need them to come in and

10    sit down.

11            THE COURT:  I think it's five minutes of time we don't

12    need.  If there aren't any issues for either side, I will have

13    you all go through the exhibits, sign off on the exhibit list,

14    and just make sure Mr. Hopkins has your contact info.

15        All right?  Thank you.

16        (Recess taken from 9:15 a.m. to 11:12 a.m.)

17        (Jury not present.)

18            THE COURT:  As you all know, we have a note from the

19    jury.  I also want to review the status of the exhibits that you

20    all were having a discussion about.

21        First, for the note which reads, "For purposes of Counts 3

22    through 7, should we treat the D.C. Metro Police and P.G. County

23    Police as officers of the United States or assisting officers of

24    the United States?"

25        I will hear from both sides, but I'm inclined to tell the

1    jury that whether they treat the police officers as officers of

2    the United States or assisting officers of the United States is

3    a factual question they have to decide.

4              MR. ROOTS:  So I think the simple answer is yes to

5    this.

6              THE COURT:  Yes, it's a factual issue for the jury?

7              MR. ROOTS:  Just a simple yes.

8              THE COURT:  You think it's yes, that -- as a matter of

9    law?

10             MR. ROOTS:  I don't understand.  A factual issue?

11             THE COURT:  I mean, do they have to decide that the

12   police officers were either officers of the United States or

13   assisting officers of the United States?

14             MR. ROOTS:  It's certainly an element of those assault

15   charges.

16             THE COURT:  Well, if you've got a case, Mr. Roots --

17   do you think there's a case that says as a matter of law these

18   officers are, I assume, assisting officers of the United States?

19             MR. ROOTS:  I believe that's my understanding.

20             THE COURT:  Does the government have a position on

21   this?

22             MS. MILLER:  We do, Your Honor.  I'm just pulling

23   up one of our -- our first set of objections, I believe, cited a

24   case.  I just want to take one moment to look for it, if you

25   don't mind.

```
1            THE COURT:  Your first set of what?

2            MS. MILLER:  Well, we called them objections to Your

3    Honor's proposed instructions.  I think we cited a case in there

4    about this.  I just need to see if I can find it, if you will

5    give me one moment, please.

6            THE COURT:  Okay.

7            MS. MILLER:  Okay, I found it, Your Honor.

8        Do you mind if I sit just so I can look at my computer?

9            THE COURT:  Sorry?

10           MS. MILLER:  Do you mind if I sit down --

11           THE COURT:  No, just speak into the microphone.

12           MS. MILLER:  In our --

13           THE COURT:  Just give me the case cite, please.

14           MS. MILLER:  It's a statutory cite.  18 U.S.C.

15   1114(a), that definition includes "assisting such an officer,

16   employee such as," and then we had noted that is such as

17   officers from the D.C. Metro Police and Prince George's County.

18       I think our argument is that because it specifically says

19   so in other portions of the same statute, the statute should be

20   read as a whole, and that is a matter of law.

21       It's -- ECF 76 is what I'm referencing, Your Honor.

22           THE COURT:  I don't know that this matters, but the

23   jury is talking about Counts 3 through 7, the assault.

24           MS. MILLER:  Right.  Because this other portion of the

25   statute we referenced is from the same code, 18 U.S.C. 1014(a),
```

1   we say the code should be read as a whole, and because it's
2   specifically stated in other subsections of 18 U.S.C., that it
3   should be read to be the same here.
4           THE COURT:  What's the defendant's position?
5           MR. ROOTS:  We think it is a fact question for the
6   jury.
7           THE COURT:  Mr. Roots, I reversed you on your view, I
8   guess.
9       I will go look at the statute.  I was trying to get on
10  Westlaw here.  I want to go back and look at Westlaw on this.
11  My inclination was it was a factual issue, but Mr. Roots
12  initially and the government seemed to think otherwise, although
13  Mr. Roots has changed his mind now.  But I will go take a look
14  at this.
15      While I have you here, let me just make sure that we are
16  all on the same page.
17      For the record, the parties and the Court had a brief
18  discussion about two exhibits that there was some dispute over
19  the length of the video exhibits that were played.  We decided
20  to go ahead and send back all of the other exhibits to which the
21  parties had agreed already and signed off on.  So the jury began
22  its deliberations with all but two exhibits so that the parties
23  could continue to have discussions and could consult the
24  transcript.
25      So I'm informed by my law clerk that you all have now

1    reached an agreement as to the two disputed exhibits, one being

2    Exhibit 183 and the other being Exhibit 236A; is that correct?

3            MR. MCCAULEY:  Yes, Your Honor.

4            THE COURT:  And my review of the transcript was that

5    183 was not admitted in full.  And are you in agreement about

6    the relevant time frame that was admitted, and do we have an

7    exhibit that's cut down to that length?

8            MS. MILLER:  Yes, Your Honor.  So for Exhibit 183-1,

9    we agree this is a roughly ten-second portion of the body cam

10   for K.V., initials K.V.

11           THE COURT:  Okay.  And then for 236, looking at the

12   record, it says -- Mr. Roots gave a minute mark, but it was

13   blank in the rough.

14       Did Ms. Wick have that time stamp?

15           MS. MILLER:  We were able to sort it out piecing

16   together different portions of the record, Your Honor, and I

17   think I can speak for both of us, and you can obviously ask

18   them, but I have the two sorted out if you want me to just state

19   it on the record.

20           THE COURT:  State it on the record, and the defense

21   can say whether it objects.

22           MS. MILLER:  So we determined that Exhibit 236 is the

23   body-worn camera of P.D. from -- and this is using the

24   time-of-day time stamp -- 15:05:29 p.m. Eastern to 15:07:19 p.m.

25   Eastern.

1          And then separately, Defense Exhibit 236A is body-worn

2     camera for P.D. for the time stamp for the time of day

3     15:05:29 p.m. Eastern to 15:12:45 p.m. Eastern.

4          THE COURT:  Does the defense agree with that

5     representation?

6          MR. ROOTS:  I believe so.  The transcript had

7     indicated that we had gotten in the video up until the last part

8     of that tarp being cut.  So yeah.  I have body cam 15:12:45, and

9     the time mark on the bottom of the video itself ending at

10    17:15:42.

11         THE COURT:  Was that a yes, Mr. Roots?

12         MR. ROOTS:  Yes, I believe, but I was looking for the

13    sheet while she was talking.  I believe that we're in agreement.

14         THE COURT:  Are you in agreement, Mr. Pierce?

15         MR. PIERCE:  Yes, Your Honor.

16         THE COURT:  All right.  So no dispute.  So those two

17    exhibits can go back.  You will sign off on those two, and they

18    will go back.

19         I will go back to chambers and be back in 15 minutes or so.

20         MS. MILLER:  Just to clarify, for the record, it's

21    actually now three exhibits:  183-1, 236, and 236A.

22         THE COURT:  Agreed?

23         MR. ROOTS:  I believe so.

24         THE COURT:  Okay.

25         (Recess taken from 11:20 a.m. to 11:31 a.m.)

1          (Jury not present.)

2              THE COURT:  All right.  I think we're reading this

3     question in different ways.

4              MS. MILLER:  And we were looking at it further and

5     thinking they may be asking either/or --

6              THE COURT:  They're asking can we treat them as either

7     A or B, and I don't think I can tell them you can treat them.

8     They have to find that.

9              MS. MILLER:  It's hard to tell what they're asking.  I

10    think they could be asking a number of things.  There's no

11    commas --

12             THE COURT:  But why would they ask -- I don't

13    understand why they would ask the question you thought they were

14    asking, which is, is it one of these two things.  Yes, of

15    course, it's one of these two things.

16        So I'm inclined to say, "The government has met the first

17    element of the assault charge if you find that the individuals

18    who were assaulted were either officers of the United States or

19    any person assisting an officer of the United States."  And

20    then, "Whether these five individuals were officers of the

21    United States or assisting officers of the United States is for

22    you to decide."

23             MS. MILLER:  I think we would agree to the first half.

24    I think the second half is redundant.

25             THE COURT:  To the extent their question is ambiguous,

1    I want to be clear, this is a question for you to decide.

2              MR. MCCAULEY:  Can Your Honor repeat that one more

3    time?

4              THE COURT:  And I'm not wedded to this language, but,

5    "The government has met the first element of the assault charges

6    if you find that the individuals who were assaulted were either

7    officers of the United States or individuals assisting officers

8    of the United States."

9              MS. MILLER:  I actually think that if we're going to

10   give an answer, we should include all of the verbs, not just

11   assault, and refer to the count numbers.

12             MR. PIERCE:  I think --

13             THE COURT:  It's Counts 3 through 7.  These are all

14   assaults.

15             MS. MILLER:  I think we should be referring to -- "if

16   they've met the first elements of Counts 3, 4, 5, 6, 7, if you

17   find the officers were assaulting, resisting, opposing,

18   impeding," not just use the "assault" verb.

19             THE COURT:  Fair enough.

20             MS. MILLER:  Then yes, I think that's fine, Your

21   Honor.

22             MR. PIERCE:  I actually think, Your Honor, the first

23   sentence there is -- respectfully, it's almost surplusage.  I

24   think the direct answer is that they have to --

25             THE COURT:  Initially, I was going to say, "This is a

factual issue for you to decide."

MR. PIERCE:  I think that's directly responsive to the question.  They have the jury instructions with respect to the first point you're making.

THE COURT:  So why shouldn't I just read the note that I've received?  "For purposes of Counts 3 through 7, should we treat the D.C. Metro Police and P.G. County Police as officers of the United States or assisting officers of the United States?"  And I say, "This is a factual issue you, the jury, must decide."

MR. PIERCE:  That's the sole question that they're asking.

MS. MILLER:  And we don't agree.  We think it's a little ambiguous.  Are they asking an either/or question, or are they asking generally, you know, reaffirming, should we treat these people as if they're assisting, generally.

THE COURT:  I'm not following you there.

MS. MILLER:  I think the answer deserves a little more clarity because the question is not very clear.

THE COURT:  What about saying "this is a factual issue for you to decide"?  You think they could be asking something other than what we think?

MS. MILLER:  When I first read the question, I didn't think it was an either/or question, actually.

THE COURT:  I thought it was ambiguous, but it would

make no sense to ask the question you thought they were asking.
Why would they even ask that, if it can be either?

MS. MILLER:  My interpretation of this could be one of
two things, either an either/or question, are they, A, officers
of the United States or, B, assisting officers of the United
States, or taking a step back generally, do they fall within
this definition at all.

THE COURT:  But why does that later question -- aren't
we putting a hand on the scale in saying yes, they do?

MR. PIERCE:  I think they are asking a question that
is -- they're asking a straight factual question that's in the
sole provenance of the jury, Your Honor.

THE COURT:  What about if I just say -- instead of
saying "this is a factual issue you the jury must decide," what
about if I say "whether the D.C. Metro Police and P.G. County
Police are officers of the United States" -- or "were officers
of the United States or were assisting officers of the United
States is a factual question you must decide"?  Does that work?

MR. PIERCE:  I think that's right, Your Honor.

MS. MILLER:  For Counts 3 through 7, I think that
makes sense.

THE COURT:  Okay.  So to repeat, "For Counts 3 through
7, whether the D.C. Metro Police and the P.G. County Police were
officers of the United States or were assisting officers of the
United States is a factual question for you, the jury, to

1    decide."

2        Everyone okay with that?  Mr. Pierce?

3            MR. PIERCE:  Yes, Your Honor.

4            THE COURT:  Ms. Miller?

5            MS. MILLER:  Yes, Your Honor.

6            THE COURT:  So we will bring in the jury.  I intend to

7    keep the jury here until 5:30.  We will have to deal with this

8    issue with the juror with a funeral later this afternoon.  I'm

9    inclined to say she can go to the funeral but she has to return,

10   I'm not going to excuse her, but this will mean that the jury

11   will lose most, if not all, of tomorrow.

12           MS. MILLER:  Do you have a sense of what time the

13   funeral is?

14           THE COURT:  10:00 a.m. in Pennsylvania.  If I've

15   excused her, we have to bring in a new juror and start from

16   scratch.  We don't gain anything by that.  I'm sorry she can't

17   stay up there.  But I'm afraid if we excuse her and we start

18   another, we are down to our last alternate.

19       Apparently, they're going to have another note.  This is a

20   conscientious jury.  So maybe you want to stay nearby.

21       If they have a note in hand --

22           COURTROOM DEPUTY:  They're working on it.

23           THE COURT:  Maybe this one will be better drafted.

24   It's the lawyers.

25       (Jury entered courtroom.)

1          THE COURT:  All right.  Good morning, ladies and

2    gentlemen.

3          So I have before me a note from you that's dated today,

4    May 23rd, at 11:00 a.m., that reads, "For purposes of Counts 3

5    and 7, should we treat the D.C. Metro Police and P.G. County

6    Police as officers of the United States or assisting officers of

7    the United States?"

8          Here is the answer to the question:  "For Counts 3 through

9    7, whether the D.C. Metro Police and P.G. County Police were

10   officers of the United States or were assisting officers of the

11   United States is a factual question for you, the jury, to

12   decide."

13         All right?  So we'll excuse you to go back to the jury room

14   and continue your deliberations.

15         (Jury exited courtroom.)

16         THE COURT:  You may have a seat.  Mr. Hopkins tells me

17   they have another note.  They're just waiting to sign.  So we

18   may as well stay here.

19         (Pause.)

20         THE COURT:  All right.  So this note from today at

21   11:41 signed by the foreperson says, "For purposes of the

22   definition of 'act of physical violence' in instruction number

23   25, does the term 'assault' have the same meaning as it does in

24   the definitions in instruction number 20?"

25         Does the defense have a view here?

1          MR. PIERCE:  My view is that the answer would be yes.

2          THE COURT:  Does the government agree?

3      This is the formal meaning of assault, I think.

4          MR. PIERCE:  We might be doing the same thing to Your

5  Honor.  I'm not sure.

6          THE COURT:  Are you reversing yourselves again?

7          MR. ROOTS:  I believe --

8          THE COURT:  Does the defense speak with one voice?

9  That's what I need to know.

10          MR. PIERCE:  Not often enough.

11          MR. ROOTS:  Usually, I'm the hardest core one, but

12  last time, I was not.  Now I think I am.

13      Okay.  So violence, I think, requires actual violence;

14  whereas, assault can be done without violence.  Assault can be

15  done with a threat.

16          THE COURT:  No, no, no.  The question is, "Does the

17  definition of act of physical violence" -- which includes the

18  term "assault," doesn't it?  Yes.  Act of violence is defined as

19  any act involving an assault.  They're asking whether the

20  word "assault" in that definition is the same as the definition

21  of "assault" that's in the assault statute.

22      Assault there is defined as "any intentional attempt or

23  threat to inflict injury upon someone else when coupled with an

24  apparent duty" -- apparent present ability to do so."

25      "In order to find the defendant committed assault, you must

1    find beyond a reasonable doubt that the defendant acted forcibly

2    and intended to inflict or intended to threaten injury."

3         I read those as the same.

4         Does the government agree?

5              MS. MILLER:  Yes.  Again here, Your Honor, because

6    it's from the same overall code section -- I'm sorry.  Let me

7    start again.

8         Because it's from the overall same Code Section 18 U.S.C.,

9    you should --

10              THE COURT:  You mean title?

11              MS. MILLER:  Title.

12              THE COURT:  One is from 40, though.

13              MS. MILLER:  At least for the purposes of the 1752

14   charge, we would say that assault should be defined as it is

15   defined in the same Title 18.

16        I don't believe assault is --

17              THE COURT:  Where are you getting the 1752?  Isn't

18   this the 5104(e)(2)(F)?

19              MS. MILLER:  Their question is about instruction 25,

20   which I think is Count 10.

21              THE COURT:  I thought it was Count 12.  You might be

22   looking at an older version.

23              MS. MILLER:  I am.  I'm sorry.  We're using an old

24   version.

25              THE COURT:  Did the defense agree that these

definitions just of the term "assault," not "act of physical
violence," but the term within that definition of "act of
physical violence," is that the same as the definition within
111(a)(1), the assault statute?

            MR. PIERCE:  I think the answer is yes, because the
definition of "act of physical violence" in Count 25 in itself
already builds in the idea of a threat.  So it doesn't
necessarily require --

            THE COURT:  And includes those other things that the
broader assault statute includes, right, intimidation and all
those other things?  It's just the --

            MR. PIERCE:  Yeah.  So I think the word "assault," the
definition should be the same as it is in 20.

            THE COURT:  Do you agree, government?

            MS. MILLER:  I just want to make sure we're all on the
same page.

      Are you asking us whether we agree that assault would
include for the purposes of instruction 25 intimidate,
interfere, et cetera?

            THE COURT:  No.  I'm answering the question.  "For
purposes of Count 11, which is" -- is this another question?
There's another question.  They're just getting warmed up.

      So I'm talking about "for purposes of the definition of
'act of physical violence' in instruction 25, that definition
includes the term 'assault.'"  So the question is, does that

1  term "assault" have the same meaning as it does in the

2  definitions in instruction 20?

3      And the definitions there say "the term 'assault' means any

4  intentional attempt or threat to inflict injury upon someone

5  else when coupled with an apparent ability to do so.  The

6  finding that one used force or attempted or threatened to use it

7  isn't the same as a finding that he attempted or threatened to

8  inflict injury.  In order to find the defendant committed

9  assault, you must find beyond a reasonable doubt that the

10  defendant acted forcibly and that the defendant intended to

11  inflict or intended to threaten injury."

12      MS. MILLER:  I think our response, Your Honor, is

13  they're in different titles.  Unless they specifically refer --

14      THE COURT:  Are you trying to incorporate the "resist,

15  oppose, impede, intimidate, interfere with" into this?

16      MS. MILLER:  No.  I'm not sure we can say it should be

17  from 18 U.S.C. 111.

18      THE COURT:  What's the government's definition?

19      MS. MILLER:  Maybe it's just the common sense of the

20  word, whatever they interpret assault to be, because there is no

21  definition of assault in Title 40.

22      THE COURT:  Well, I am confident that some court has

23  defined what assault in that statute means.

24      MS. MILLER:  Maybe we should take a second to look.

25  I'm not disagreeing that it would make sense to do that, except

1    that it's a different title entirely.

2          THE COURT:  If you want to propose something else, I

3    will give you time to research it.

4       While you're at it, let me share a second note from the

5    jury.  "For purposes of Count 11, should we use the definition

6    of 'intentionally' from instruction number 20 when considering

7    the meaning of 'intent'?"

8       This is instruction 24, disorderly conduct in a Capitol

9    building or grounds.  So there, the defendant needed to do so

10    with the intent to impede, disrupt, or disturb the orderly

11    conduct of a session of Congress, and they're referencing again

12    instruction 20, which is the assault instruction where we define

13    the term 'intentionally' means that the defendant acted

14    knowingly, consciously, and voluntarily.

15       You all want some time to research these?

16          MS. MILLER:  I think we could use a little time to

17    just digest what they're asking, Your Honor, if you don't mind,

18    please.

19          THE COURT:  All right.  Does the defense have a

20    preliminary thought on that?

21          MR. PIERCE:  I do, subject to change.  I'm actually

22    not sure we should use that definition, because the way I'm

23    reading at least preliminarily the definition of "intentionally"

24    in instruction 20 strikes me as more of he intended to do, like,

25    the act that he did, he mentally and physically intended to do

the actual act that he did, the physical act that he did.

THE COURT:  I know.  And it's defined in the other instruction as the defendant knowingly, consciously, and voluntarily committed an act.

MR. PIERCE:  What I'm saying is, I think in Count 11, intent is more of a *mens rea* sort of concept as opposed to --

THE COURT:  Intent is defined somewhere.  Isn't it defined consistently across the Code as knowingly -- usually, it's "knowingly and voluntarily," I think.  Anyway, there's some common language in the instructions.

All right.  I will give you all some time to look at it, and you all can let me know when you're ready.

(Recess taken from 12:00 p.m. to 12:24 p.m.)

THE COURT:  All right, Counsel.  Let's take up the first one, the assault.

What are the parties' positions on this one?  Has the defense changed its view?

MR. PIERCE:  No, Your Honor.  I think the answer to that one is yes, that definition should go back to 20.

MS. MILLER:  So, Your Honor, we did do a little case law research, and there actually isn't a ton of case law on interpreting the definition of "assault" in 40 U.S.C. 5104.

I did find one decision from E.D.V.A. where they specifically say -- and it's not discussing a lot about assault specifically within that statute, but it is talking about how

40 U.S.C. 5104 should not be connected to an assault statute.

The quote is -- and this is 2011 WL 6151422, *U.S. v. Mekowulu*. The Court says, "Turning to the first definition in 40 U.S.C. 5104(a)(2), Title 40 is a collection of statutes that regulates public buildings and works, and thus, its connection to Title 8, an assault statute, is less than apparent. More problematically," and then goes back --

THE COURT: Title what? You mean 18?

MS. MILLER: No, it says Title 8. I don't have a lot of experience with that title.

THE COURT: That's an immigration title.

MS. MILLER: All I'm saying is, there is a decision talking about how 5104 is not similar to an assault statute. That's one thing.

And then we did brief to some degree a similar issue in *United States v. Cua*, which is 21-cr-00107, where we talk about what the common law and the D.C. criminal jury instructions, how those define "assault."

THE COURT: Is this not from the common law, the definition that is given in instruction 20?

MS. MILLER: I think it's in part from the common law, but the big difference and what we briefed in *Cua*, which is mostly in ECF 285, is that the common law and specifically the criminal jury instruction for the District of Columbia number 4.100 says that it should include -- "the term 'assault' means

1    any intentional attempt to inflict injury on someone else when

2    coupled with a present ability to do so," which I believe is

3    already in the other definition, but this is where it differs.

4        "To find that the defendant committed an assault, you must

5    find beyond a reasonable doubt that the defendant intended

6    to" --

7            COURT REPORTER:  Slow down, please.

8            MS. MILLER:  Sorry.

9        "That the defendant intended to inflict or threaten injury.

10   Injury means any physical injury, however small, including a

11   touching offense to a person of reasonable sensibility."

12           THE COURT:  I don't see that as contradictory to

13   what's stated here.  It says at the bottom of the paragraph that

14   the defendant intended to inflict or intended to threaten

15   injury.

16       So that's just giving an example.  But I don't see anything

17   you read as inconsistent with what appears in instruction 20.

18           MS. MILLER:  I think it's the "however small" that's

19   different.  It includes touching for the purposes of a

20   misdemeanor.

21           THE COURT:  The law clerk reminds me that I

22   specifically rejected that when you raised it in this case

23   maybe.

24           MS. MILLER:  For the purposes of this statute?  For

25   111, I think, but I'm not sure we raised it for 5104.

1          THE COURT:  I'm just a little concerned about giving

2     two separate definitions absent authority that says the Court

3     should do so.

4        So aside from "however small," the government doesn't

5     disagree that the definition is essentially the same as what

6     you've read?  The language "however small."

7          MS. MILLER:  Just to be crystal clear, I think from

8     the model jury instruction, it says, "Injury means any physical

9     injury, however small, including a touching offensive to a

10    person of reasonable sensibility."

11         THE COURT:  And that's what you're asking for for 40?

12         MS. MILLER:  Yeah.  We're just asking that you would

13    consider it, Your Honor.

14         THE COURT:  All right.  Mr. Pierce, Mr. Roots?

15         MR. PIERCE:  Your Honor, I agree with you, what you

16    just said a moment ago.  I don't think we should be giving

17    multiple definitions of the word "assault."  I think it's going

18    to be very confusing, and the count physical violence -- the

19    definition of "physical violence" clearly are tied in to the

20    same concepts we're dealing with in the assault counts.

21         THE COURT:  I tend to agree, and the term "act of

22    physical violence" means any act involving an assault or other

23    infliction or threat of infliction of death or bodily harm on an

24    individual or damage to or destruction of real or personal

25    property."

1           So I will give the narrower definition.

2           So the answer to the first question will be -- the jury

3    asks, "For purposes of the definition of 'act of physical

4    violence' in instruction 25, does the term 'assault' have the

5    same meaning as it does in the definitions in instruction 20?"

6           The Court will answer "yes" -- recognizing the government's

7    request that it consider a slightly broader definition, the

8    Court will answer "yes."

9           Is a simple "yes" okay to both sides?

10          All right.  So that's the first.

11          Now, for the second, looking at this intentional issue, I

12   am concerned that this is a specific intent crime.  So my

13   initial inclination to accept the "intentionally" from the

14   assault offense, I'm questioning.

15               MR. PIERCE:  I have some very clear thoughts on this

16   now, and I think this is actually very important and goes to

17   what Your Honor just said, which is, I think the concept of

18   intent in Count 11, I guess it is, intended to impede, obstruct,

19   et cetera, it's similar to the idea of intent in the 1512

20   charge, very much.  Right?

21               THE COURT:  Specific intent.  Impede, disrupt or

22   disturb.

23               MR. PIERCE:  Right.  Whereas, with assault, the

24   concept of intentionally is much more along the lines of --

25               THE COURT:  General intent, yeah.

1          MR. PIERCE:  Did you actually consciously intend to

2     move your arm rather than have a seizure.

3          THE COURT:  And I would note that a number of circuits

4     have expressed concerns about giving instructions on intent or

5     intentionally, the Sixth, the Seventh, the Eighth, the Ninth.

6     And one of the concerns is that care must be given to conform

7     the elements of specific offenses, because statute or case law

8     may establish a different or nuanced definition of the mental

9     state element for the specific crime.

10         So what's the government's position on this?

11         MS. MILLER:  I just want to make sure I'm

12     understanding.  So you're inclined not --

13         THE COURT:  Not to equate the two.

14         MS. MILLER:  And then what would we provide instead?

15     Just say no?

16         THE COURT:  Tell me what your proposal was.

17         MS. MILLER:  I think our inclination was that it's

18     fine because "intentionally" is typically defined pretty

19     standard across the board.

20         THE COURT:  You don't agree that there's specific

21     intent crimes like here where you have to have the specific

22     intent to impede, disrupt, or disturb, as opposed to you act

23     intentionally when you assault?

24         MS. MILLER:  Right, but I think they're asking for a

25     definition of what "intentionally" means, not what is the

required intent, but what does "intentionally" mean for the
purposes of this statute.  And I think the word "intentionally"
is defined pretty --

THE COURT:  Does either side have an issue with the
Court just saying here "you must find that the defendant did so
with the purpose to impede, disrupt?"

I mean, is that the work that "intent" is doing there,
Mr. Pierce?

MR. PIERCE:  Yes, it's the purpose or motive --

THE COURT:  I don't know if it's motive.

MR. PIERCE:  Purpose.  I agree with that.

MS. MILLER:  I think equating purpose is fine.

THE COURT:  Both sides?  So here I've got a D.C.
Circuit case, *U.S. v. Haldeman*, and that is 559 F.2d 31 at 113.
Here, this is talking about the crime of conspiracy, but it's
defined as intent means that a person had the purpose to do a
thing.  It means he made an act of the will to do the thing.  It
means that the thing was done consciously and voluntarily and
not inadvertently or accidentally.

That's what the judge said, and the Circuit approved it.
And this conspiracy did require a specific intent.

So in light of that and the parties' agreement, that both
sides agree that it would be fine to inform the jury that -- so
the answer to the question "for purposes of Count 11, should we
use the definition of 'intentionally' from instruction number 20

when considering the meaning of intent," how about just simply
saying "for purposes of Count 11, the second element of
Count 11, the jury must find that the defendant acted with the
intent or purpose to impede, disrupt, or disturb the orderly
conduct"?  Is that acceptable?

MR. PIERCE:  I would say no, period, and then say he
had to act with a purpose to impede, obstruct, et cetera.

THE COURT:  Say that --

MR. PIERCE:  I would say no to directly answer their
question, and then I would say the defendant had to act with,
you know, the purpose to obstruct, impede, or whatever the words
are.

THE COURT:  That the defendant acted with the purpose
to impede, disrupt, or disturb?

MR. PIERCE:  Yes.

THE COURT:  What is the government's recommendation?

MS. MILLER:  One second.

I think we may be saying the same thing, but what we would
propose, Your Honor, is you say "for the purposes of this
count," so Count 11, that "'intentionally' means with the
purpose to," and then fill in the rest of the verbs.

THE COURT:  So "for the purposes of Count 11, 'intent'
means" --

MS. MILLER:  I think that's where we're not seeing eye
to eye.  I think they ask about the word "intentionally."  So

intentionally means --

THE COURT:  The word in the instruction number 24 is "intent."  So they're asking whether they can borrow from the definition of "intentionally" and apply it to the word "intent" in the second element.

So are you saying for Count 11, intent means purpose, and then state what I said before?

MS. MILLER:  Yeah, I think that would be great, please.

THE COURT:  Any objection?  I'm going to say "no," as you want.  "For Count 11, the term 'intent' means purpose.  The jury must find that the defendant acted with the purpose to impede, disrupt, or disturb the orderly conduct" -- "to satisfy the second element."

There's a fourth note.  This is just a password is not working.  It says, "Second card with evidence password not working," and they give the password, and the time is 12:31.

Can you work with IT to fix that?

MS. MILLER:  I think they may be using the password for the first jump drive, which is not the same as the second one.

THE COURT:  Do you all want to tell me what to tell them?  Is that the cleanest way to do this?

MS. MILLER:  So the answer would be, Your Honor, that --

1          THE COURT:  I won't read it out, but I will say "your

2     question about the password, the answer will be provided to you

3     by the courtroom deputy with a piece of paper."

4        All right?

5          MS. MILLER:  Okay.

6          THE COURT:  So question number 1, the answer is "yes."

7     Question number 2, the answer is "no.  For Count 11, the term

8     'intent' means purpose.  Therefore, to satisfy the second

9     element of the offense, the jury must find that the defendant

10    acted with the purpose to impede, disrupt, or disturb the

11    orderly conduct of a session of Congress or either house of

12    Congress or the orderly conduct of a hearing before or any

13    deliberation of a committee of Congress or either house of

14    Congress."

15       Are both sides satisfied with that?

16          MR. PIERCE:  Yes, Your Honor.

17          MS. MILLER:  Yes, Your Honor.

18          THE COURT:  And the third will be the piece of paper

19    Mr. Hopkins is going to give them.  All right.  And then I think

20    lunch for everyone.

21          COURTROOM DEPUTY:  It should be there already.

22          THE COURT:  You can tell them they just need to hold

23    off the notes for an hour while we eat.

24       One other thing, Counsel.  At 5:30, when I excuse them, I

25    will address, if you want to be here, both of these jurors about

1    their conflicts.  If you all have any other views, I'm

2    interested in hearing them now or later.  But as I said before,

3    my inclination is to tell the first juror she may go but return

4    and the second it's unlikely will be excused.

5              MR. PIERCE:  I agree with that, Your Honor.

6              THE COURT:  Do you agree?

7              MS. MILLER:  Yes, Your Honor.

8         (Jury entered courtroom.)

9              THE COURT:  All right, ladies and gentlemen.  Welcome

10   back.  We can tell you're very hard-working.

11        So your first note, "For purposes of the definition of 'act

12   of physical violence' in instruction number 25, does the term

13   'assault' have the same meaning as it does in the definitions in

14   instruction number 20?"

15        The answer to that question is yes.

16        Note number 2 -- that first note was at 11:41.

17        The second note is 11:45, and that reads, "For purposes of

18   Count 11, should we use the definition of 'intentionally' from

19   instruction number 20 when considering the meaning of 'intent'?"

20        The answer to that is no.  For Count 11, the term intent

21   means purpose.  Therefore, to satisfy the second element of the

22   offense, the jury must find that the defendant acted with the

23   purpose to impede, disrupt, or disturb the orderly conduct of a

24   session of Congress or either house of Congress or the orderly

25   conduct of a hearing before or any deliberation of a committee

1    of Congress or either house of Congress.

2        And the final jury note is the one about the password, and

3    that is -- the third note is the password issue, and the

4    courtroom deputy will provide you with the correct password.

5        And then the fourth is related to lunch.  I'm going to let

6    again the courtroom deputy deal with warming up the lunch.  All

7    right?

8        I think that's all, ladies and gentlemen.  So we will

9    excuse you now for lunch, and we will be away for approximately

10    an hour for lunch.  Save your notes, and we will be back to

11    answer them.

12        (Jury exited courtroom.)

13        THE COURT:  All right, folks.  Don't go too far.  And

14    if I don't see you again, do you want to come back at 5:30 to be

15    here when I talk to these jurors?

16        MR. PIERCE:  Yes, Your Honor.

17        THE COURT:  Okay.  Up to you.  If not, at 5:30, that's

18    what I will do.  Is it your plan to come back, Mr. Pierce?

19        MR. PIERCE:  Certainly, at least one of us will be

20    back.

21        THE COURT:  Same for the government?

22        MS. MILLER:  Yes, Your Honor.

23        THE COURT:  I have a feeling I will see you before

24    then.

25        (Recess taken from 12:46 p.m. to 5:23 p.m.)

1       (Jury not present.)

2           THE COURT:  So before we bring anyone in, I understand

3       there was a question from the parties whether the jurors could

4       stay later.  The answer that came back was no, and they still

5       have a good amount to do.  So it's not like a little bit extra

6       time would enable them to reach a verdict at all.

7           So what I plan to do is call in juror number 6.  She's the

8       one who gave us the note about the funeral tomorrow and is

9       asking to be relieved from duty tomorrow and Thursday, but as

10      I've said before, I'm not inclined to -- I'm inclined to let her

11      go to the funeral and not miss Thursday and see if she can come

12      for a few hours tomorrow afternoon.  I don't know if that's

13      possible, but I will ask her about that.

14          We also had one other note in the interim since I've seen

15      you all about a government's exhibit that Mr. Hopkins was able

16      to take care of that I understand he informed you both about.

17          Right?

18              MR. PIERCE:  Yes, Your Honor.

19              MR. MCCAULEY:  (Nodded head.)

20          THE COURT:  So I will talk to juror 6, and then I will

21      bring in all the jurors, dismiss them.  Depending on what is

22      feasible with juror 6, either I will dismiss them until Thursday

23      morning or until tomorrow afternoon some time.  And then I will

24      bring juror number 1, who has raised an issue about a family --

25      not a family, a personal trip he wants to take on Thursday and

explain that that's not something that at this point I can
grant.

Any concerns with that approach, Mr. Pierce?

MR. PIERCE:  No, Your Honor.

THE COURT:  All right.  Government?  I'm interested in
your thoughts.

MS. MILLER:  No, it makes sense to have a discussion
with them and see if we can get more information before we make
any decisions.

THE COURT:  From whom?

MS. MILLER:  The two jurors -- well, especially the
one with the funeral.  We might have a different opinion if she
makes the case that she really can't be here both Wednesday and
Thursday.

THE COURT:  I think she's got a funeral tomorrow
morning.  So I think she wants to be gone both days.  But you
all understand that if we bring in the alternate, they have to
start over, and then we have no alternate left.  So I'm
reluctant to do that.

Okay.  So let's bring in juror number 6.

(Pause.)

THE COURT:  Okay.  So they've said that they've "come to a
decision on one of the counts.  Can we deliver that today?"

MS. MILLER:  I can't say that I'm well-versed on the
law in this, but I think if there's any possibility whatsoever

1    that we might have to use an alternate, we shouldn't be

2    delivering any verdicts.  You know what I mean?  So maybe let's

3    explore what the real situation is and whether there's any real

4    possibility we might have to take in an alternate.

5          THE COURT:  We don't even know that right now.  We

6    might not need an alternate today or tomorrow, but we could on

7    Thursday.

8       I think this short period of time, I'm not inclined to take

9    that.

10      Does the defense have a different perspective?

11          MR. PIERCE:  I've never experienced this myself

12    before, but I tend to agree.  I think it would be kind of --

13          THE COURT:  So just to be clear, this is at 5:24 p.m.

14    It says, "We came to a decision on one of the counts.  Can we

15    deliver that today?"

16      I think when we bring them in, I will just say we

17    understand you have a decision on one count, we're not going to

18    take that verdict today, we're going to wait, not say we can't,

19    but just we're not going to.

20      Any objection to that?

21          MR. PIERCE:  No objection, Your Honor.

22          MS. MILLER:  No, Your Honor.

23          THE COURT:  Okay.

24      (Juror number 6 entered courtroom.)

25          THE COURT:  Good morning, ma'am.

 1          COURTROOM DEPUTY:  It's evening.

 2          THE COURT:  Oh, it's a long day.  Good evening.

 3     I'm very sorry to hear about your grandfather.  I

 4   understand that there's a funeral tomorrow in Pennsylvania?

 5          JUROR:  Yes.

 6          THE COURT:  What time is the funeral?

 7          JUROR:  10:00.

 8          THE COURT:  And how are you getting to Pennsylvania?

 9          JUROR:  I'm driving to Pennsylvania tonight.

10          THE COURT:  And I understand that you would like to be

11   released from service tomorrow and Thursday?

12          JUROR:  There is a burial on Thursday morning also in

13   Pennsylvania.

14          THE COURT:  What I was going to ask you about is

15   whether you could attend the funeral and come back to continue

16   your deliberations.

17     I'm concerned about excusing you as a juror from this case,

18   because that means we need to bring in the alternate, and we

19   only have one alternate left, and the deliberations would have

20   to start from scratch with the alternate.

21          JUROR:  Okay.

22          THE COURT:  And if we wait until Friday, there's at

23   least one juror who has conflicts later in the week, not that

24   the Court's necessarily going to excuse that, but I do think

25   there are likely a number of different jurors or parties or

1    staff that would have issues the longer this goes on.

2         So I know that's a lot to ask, but would you be open to

3    attending the funeral and driving back and maybe deliberating a

4    couple of hours tomorrow or at least deliberating on Thursday?

5              JUROR:  So I definitely could not be here tomorrow.  I

6    could miss Thursday and be here if necessary.

7              THE COURT:  Okay.  All right.  Let me have you step

8    out for a moment.  Okay?

9         (Juror number 6 exited courtroom.)

10             THE COURT:  For the record, the juror is obviously

11   upset and wants to be there with her family, which of course we

12   all can understand.

13        What's the view of each side about a recommendation here?

14             MR. PIERCE:  I mean, my view is that she should --

15   she's obviously very upset and sounds like there might be a

16   service tomorrow and then the burial on Thursday is kind of what

17   I interpreted.  And if she's close to the grandfather, to miss

18   either one is probably very upsetting.

19        My view is there's going to be scheduling things, but

20   they're obviously taking it very seriously, and they're going

21   through the evidence.  I think it just takes as long as it

22   takes.

23             THE COURT:  Don't excuse her but bring her back on

24   Friday?

25             MR. PIERCE:  That would be my view.

1          THE COURT:  Even though there are other jurors who

2     have conflicts?  We certainly didn't expect this to go into next

3     week.

4          MR. PIERCE:  I think, Your Honor, obviously, there's

5     different degrees of conflicts in terms of what the conflict is.

6          THE COURT:  I know.  We just can't anticipate what --

7     I think before we make that decision to wait until Friday to

8     start deliberating again with her, that we should ask the jury

9     as a whole what it might be like for them to deliberate next

10     week, because we could lose a whole bunch for similar sorts of

11     serious matters that we don't know about because no one's

12     anticipated that.

13      What's the government's position?

14          MR. PIERCE:  If I could just add while they're

15     conferring --

16          THE COURT:  Sure.

17          MR. PIERCE:  -- I also just have a general sort of

18     sense or feel that -- obviously, we want to get this done.

19     Everybody does.  But at the same time, we don't want jurors to

20     have any kind of time pressure.

21          THE COURT:  Of course.  But what -- how does that cut,

22     Mr. Pierce?

23          MR. PIERCE:  I just -- maybe it's because I've

24     basically had to move here for the next year and a half.  I

25     don't have anywhere else to go.  I just feel like they should

1    take as long as they take.  It's obviously a --

2         THE COURT:  No, I don't want them to feel pressured in

3    any way.  I don't mean to give them that impression.  I'm just

4    concerned that at this point, we don't know what potential

5    conflicts could surface for next week, and I think we've got to

6    take that into account if we're talking about excusing this

7    juror for two days and to come back and resume on Friday.

8         MR. PIERCE:  I totally agree.

9         THE COURT:  I don't want to convey in any way to the

10   jury that they need to speed up or anything like that.  At the

11   same time, I do want to know what we're dealing with.

12       What's the government's position?

13        MS. MILLER:  We agree, Your Honor, with all the

14   sentiment.  I think that especially because next week -- not

15   only is this a long weekend, but we know that a lot of people

16   end up tacking on extra days.  It's not until Tuesday that they

17   would come back.

18        THE COURT:  That's right.  And given that there's one

19   individual who, for personal reasons, would like to leave

20   Thursday -- but presumably, it's for the weekend.

21       So the question is, should we be excusing them now to come

22   back next Tuesday?  That's another option.

23        MS. MILLER:  Right.  And I think we have to ask very

24   candidly, please look carefully at your calendars.  I know a lot

25   of people tack on days before Memorial Day weekend but also

after Memorial Day weekend.  So they may be taking additional days next week, on Tuesday, Wednesday.

THE COURT:  Would you all propose that I bring all the jurors in and ask them as a group or one by one, maybe one by one what their schedule is like for the next ten days?

MR. MCCAULEY:  I think to avoid the appearance of any pressure among the jurors, that one by one would be prudent.

MS. MILLER:  Definitely agree.

THE COURT:  Mr. Pierce?

MR. PIERCE:  I mean, my inclination would have been to just bring them in as a group and get a feel for what they prefer to do.

THE COURT:  There's no harm in doing it one by one, is there?

MR. PIERCE:  No.  It will just take a little time. That's fine.

THE COURT:  Let's do that.  Let's start with -- the next juror is juror number 1, who has the other issue, and let's -- we'll put them in the witness stand.  I'll ask them a few questions.  I'll give you all a chance to ask quick follow-up, but let's try to keep this moving.  And I'll ask them not to talk about it when they go back, just so they don't feel pressured.

MS. MILLER:  I don't know if they have their telephones, but they may need to consult their calendars for

1    this purpose.  I know I can't remember what appointments I have

2    next week.

3              THE COURT:  Let's bring them in and see if they know

4    off the top of their heads.  If not, we will give them a chance

5    to consult that.

6        Nothing's easy, is it?

7        (Juror number 1 entered courtroom.)

8              THE COURT:  Good afternoon, sir.

9              JUROR:  Good afternoon.

10              THE COURT:  It's been a long day.

11              JUROR:  I've been standing the whole time.

12              THE COURT:  Do you not have any chairs in there?

13              JUROR:  No.  I was the foreperson, so --

14              THE COURT:  Let me ask you, we understand that you

15    have a conflict of sorts on Thursday?

16              JUROR:  Yes.  I'm supposed to fly out Thursday at

17    9:00 a.m.

18              THE COURT:  And return when?

19              JUROR:  Monday evening.

20              THE COURT:  And is this for work or personal trip?

21              JUROR:  No, it's just to go home to see family.

22              THE COURT:  And if you don't mind me asking, where is

23    home?

24              JUROR:  Omaha, Nebraska.

25              THE COURT:  All right.  Have you purchased

1    nonrefundable tickets?

2        JUROR:  I need to check, because I can't remember.  I

3    think it's okay for me to change, because it's Southwest.  I

4    think you can change.

5        THE COURT:  Let me ask you, we've had some unexpected

6    emergencies arise with the jurors.

7        JUROR:  I know.

8        THE COURT:  We're just curious, what is your schedule

9    like next week, Tuesday through Friday?

10       JUROR:  Just regular work.

11       THE COURT:  Would you -- if needed, would you be able

12   to continue next week?

13       JUROR:  Yes.

14       THE COURT:  Okay.  All right.  Ms. Miller or

15   Mr. McCauley?

16       MS. MILLER:  No additional questions here, Your Honor.

17       THE COURT:  Mr. Pierce or Mr. Roots?

18       MR. PIERCE:  No questions, Your Honor.

19       THE COURT:  All right.  So we're going to have you

20   step back down.  And I'm just inquiring of each juror, but I

21   encourage you all not to talk about it when you go back there.

22   I don't want anyone to feel pressured one way or the other.

23       JUROR:  Sounds good.  Thank you.

24       THE COURT:  Thank you.

25       (Juror number 1 exited courtroom.)

1          (Juror number 2 entered courtroom.)

2               THE COURT:  Good afternoon.

3               JUROR:  Good afternoon.

4               THE COURT:  Given the unexpected emergencies that have

5     come up with the jury, we're just speaking to each one of you to

6     see what your schedule is like in the next ten days or so, if

7     you know.

8               JUROR:  I have no unexpected --

9               THE COURT:  Do you have any conflicts?

10              JUROR:  No, not that I can at the moment think of.

11              THE COURT:  Is there something that might arise, or

12    you're just being cautious?

13              JUROR:  No, I think nothing that would come -- nothing

14    at the time like 9 to 5.

15              THE COURT:  For the remainder of this week and next

16    week?

17              JUROR:  Yeah.  I've been having ongoing work at my

18    house done.  So that's the delays in the morning.  So I can't

19    guarantee that I would ever be able to be here before 8:30 or

20    so.  That's my only conflict.

21              THE COURT:  But 9:00, 9:30, you can make?

22              JUROR:  Yes.  And then after 5:00, because I have to

23    let them out and lock the doors and everything.

24              THE COURT:  Is staying until 5:30 too late for you?

25              JUROR:  No, that should be fine.

```
 1              THE COURT:  Any questions?

 2              MS. MILLER:  We want to be totally sure.  You don't

 3    have any Memorial Day plans that require travel out of the D.C.

 4    area?

 5              JUROR:  No.

 6              MR. PIERCE:  No questions.

 7              THE COURT:  If you could just step back in, and I ask

 8    that you please don't talk about this with the jurors, because

 9    we don't want anyone to feel any pressure.

10              JUROR:  Yes.  Thank you.

11              THE COURT:  Thank you.

12         (Juror number 2 exited courtroom.)

13         (Juror number 4 entered courtroom.)

14              THE COURT:  Good afternoon, ma'am.

15              JUROR:  Good afternoon.

16              THE COURT:  We are just speaking to each juror to get

17    a sense of what your calendar is like for the remainder of this

18    week and next week.

19         Do you have any travel plans over the holiday or any other

20    conflicts in the next week?

21              JUROR:  This weekend, I'm leaving Friday.

22              THE COURT:  Friday, what time?

23              JUROR:  Afternoon, late afternoon, so 8:00.

24              THE COURT:  8:00 p.m. on Friday you're leaving, and

25    returning when?
```

```
 1                    JUROR:  I don't return until Tuesday.

 2                    THE COURT:  When on Tuesday?

 3                    JUROR:  9:00 in the morning.

 4                    THE COURT:  Are you driving or flying?

 5                    JUROR:  Flying.

 6                    THE COURT:  And you literally land at 9:00 a.m. on

 7          Tuesday?

 8                    JUROR:  Well, per se 9:00.

 9                    THE COURT:  You could be here by 10:00?

10                    JUROR:  Yeah.

11                    THE COURT:  Any conflicts next week?

12                    JUROR:  Not that I know of, no.

13                    THE COURT:  All right.  Any questions?

14                    MS. MILLER:  None from us, Your Honor.  Thank you.

15                    MR. PIERCE:  No questions, Your Honor.  Thank you.

16                    THE COURT:  Thank you, ma'am.  We ask that you not

17          talk with the other jurors about this when you go back.

18                    JUROR:  Okay.

19              (Juror number 4 exited courtroom.)

20              (Juror number 7 entered courtroom.)

21                    THE COURT:  Good afternoon.  We're just speaking to

22          each juror about your plans for the next ten days or so because

23          of the holiday weekend and there's been some unexpected

24          emergencies come up with the jurors.

25              Do you have any travel plans or any conflicts coming up
```

1    this week or next week?

2           JUROR:  No, I don't.  The only thing is at the end of

3    June is something.

4           THE COURT:  We're not planning on being here at the

5    end of June, at least not for this trial.

6           JUROR:  I'm waiting until this is over, and then I'm

7    going to get to the water somewhere.

8           THE COURT:  Thank you.  We appreciate that.

9        Any questions?

10          MS. MILLER:  No, Your Honor.

11          MR. PIERCE:  No, Your Honor.

12          THE COURT:  Thank you.  If you could refrain from

13   talking about this in the jury room.

14          JUROR:  Absolutely.

15      (Juror number 7 exited courtroom.)

16      (Juror number 8 entered courtroom.)

17          THE COURT:  Good afternoon, ma'am.  We are just

18   speaking to each of you individually about your upcoming plans.

19   It's a holiday weekend.  There are some unexpected conflicts.

20   Are there any travel plans or any other conflicts this week or

21   next week for you?

22          JUROR:  This Friday, I am scheduled to leave to go to

23   my nephew's high school graduation.

24          THE COURT:  When are you scheduled to leave?

25          JUROR:  Friday morning.

1          THE COURT:  Okay.  And when are you returning?

2          JUROR:  Sunday.

3          THE COURT:  All right.  How about next week?  Do you

4     have any conflicts next week?

5          JUROR:  No.

6          THE COURT:  All right.  Any questions?

7          MS. MILLER:  None from us, Your Honor.  Thank you.

8          MR. PIERCE:  No, Your Honor.  Thank you.

9          THE COURT:  Thank you.  I would ask that you not talk

10    about it in the jury room.

11       (Juror number 8 exited courtroom.)

12       (Juror number 9 entered courtroom.)

13          THE COURT:  Good afternoon.  We are speaking to each

14    of you individually to get a sense of your schedules.  There

15    have been some unexpected conflicts, and the holiday weekend is

16    coming up, and we're trying to figure out whether jurors have

17    any travel plans or any other conflicts the remainder of this

18    week or next week.

19          JUROR:  My only issue would be June the 5th, and

20    that's it.

21          THE COURT:  That's a couple weeks away, yes?

22          JUROR:  Yes.

23          THE COURT:  So you're clear.

24       Any questions?

25          MS. MILLER:  No, Your Honor.

1           MR. PIERCE:  No, Your Honor.

2           THE COURT:  Thank you.  We ask that you not talk to

3    anyone back there.  We don't want to influence anyone.

4       (Juror number 9 exited courtroom.)

5       (Juror number 10 entered courtroom.)

6           THE COURT:  Good afternoon.  We are speaking to each

7    of you individually to get a sense of your calendar this week

8    and next week with the holiday weekend and to try to figure out

9    if you have any travel conflicts or any other conflicts.

10          JUROR:  No, no plans.

11          THE COURT:  Terrific.

12      Any questions?

13          MS. MILLER:  No, Your Honor.

14          MR. PIERCE:  No Your Honor.

15          THE COURT:  Thank you.  Please refrain from talking

16   back there.

17      (Juror number 10 exited courtroom.)

18      (Juror number 11 entered courtroom.)

19          THE COURT:  Good afternoon, ma'am.  How are you?

20          JUROR:  I'm fine.

21          THE COURT:  We are bringing you in one by one to get a

22   sense of your calendar this week and next week.

23      With the holiday weekend, are there any conflicts for you?

24          JUROR:  I'm supposed to travel on Friday.

25          THE COURT:  Friday when?

```
 1              JUROR:  This Friday.

 2              THE COURT:  In the morning or in the evening?

 3              JUROR:  We're leaving at 3:00 a.m.

 4              THE COURT:  3:00 a.m. on Friday?

 5              JUROR:  Yes.

 6              THE COURT:  Okay.  And when do you return?

 7              JUROR:  Monday.

 8              THE COURT:  Monday?  Okay.  Any conflicts after that?

 9              JUROR:  No; no, ma'am.

10              THE COURT:  All right.  So please don't talk about

11    this back there.

12          Any questions?

13              MR. PIERCE:  No questions, Your Honor.  Thank you.

14              THE COURT:  Thank you, ma'am.

15          (Juror number 11 exited courtroom. )

16          (Juror number 12 entered courtroom.)

17              THE COURT:  Good afternoon, ma'am.  How are you?

18              JUROR:  Fine.

19              THE COURT:  Good.  We are bringing you in one by one

20    to talk about your calendars this week and next week.

21          Do you have any conflicts coming up?

22              JUROR:  Wednesday, a doctor's appointment, Friday, a

23    doctor's appointment.

24              THE COURT:  This week?

25              JUROR:  Yes.  If I knew earlier, I could cancel it.
```

1          THE COURT:  So this Wednesday and this Friday.  What

2     about next week?  Any issues?

3          JUROR:  No, I don't think so, huh-uh.

4          THE COURT:  Okay.  All right.

5        Any questions for this juror?

6          MR. PIERCE:  No questions, Your Honor.  Thank you.

7          MS. MILLER:  No, Your Honor.

8          THE COURT:  We ask that you don't talk about it when

9     you go back.  All right.  Thank you.

10        (Juror number 12 exited courtroom.)

11        (Juror number 13 entered courtroom.)

12          THE COURT:  Good evening, ma'am.  How are you?

13          JUROR:  Tired.  How are you?

14          THE COURT:  Yes.  We can imagine.

15        We are speaking to you individually to find out if you have

16     any conflicts this week on the calendar or next week on the

17     calendar.

18          JUROR:  I have a bridal shower Friday.

19          THE COURT:  During the day?

20          JUROR:  No.

21          THE COURT:  Okay.  What about during the day?

22     Anything this week or next week?  Any travel?  Any other plans?

23          JUROR:  No travel, nope, nothing.

24          THE COURT:  Okay.  Any questions?

25          MR. PIERCE:  No questions, Your Honor.  Thank you.

```
 1              THE COURT:  Thank you.

 2         (Juror number 13 exited courtroom.)

 3         (Juror number 14 entered courtroom.)

 4              THE COURT:  Good evening.

 5              JUROR:  Good evening.

 6              THE COURT:  So we are just bringing you in one by one

 7    to get a sense of your calendars this week and next week,

 8    especially with the holiday weekend.

 9         Do you have any plans, any conflicts that we should know

10    about?

11              JUROR:  I have a couple of work obligations coming up.

12    If I really needed to, I could probably miss them, but I'm

13    supposed to be meeting a colleague on Thursday.  I have some

14    other meetings and obligations on Thursday and then, I guess,

15    the following Tuesday.

16              THE COURT:  What's the following Tuesday?

17              JUROR:  I'm supposed to be at like a lunch I'm

18    supposed to be doing.

19              THE COURT:  You could miss it if you had to?

20              JUROR:  If I need to.  I would like to be able to do

21    my work obligations, but if I need to, yeah.

22              THE COURT:  Anything else you can think of?

23              JUROR:  That's the big thing at the moment.

24              THE COURT:  Okay.  All right.  Thank you.  I

25    appreciate it.
```

 1          Any questions?

 2               MR. PIERCE:  No questions, Your Honor.

 3               MS. MILLER:  No, Your Honor.

 4          (Juror number 14 exited courtroom.)

 5               THE COURT:  All right.  Well, given the situation with

 6     juror number 1, to accommodate her, we would be out Wednesday

 7     and most, if not all, of Thursday, and there are a number of

 8     jurors who have conflicts on Friday.

 9          So I wonder whether the parties would be amenable to

10     excusing the jury to come back next Tuesday, begin deliberations

11     at 10:00 a.m. on Tuesday.

12          If not, I think the other option is to bring in an

13     alternate, but I still think we -- we could force people to stay

14     on Friday, but there are two, at least two, maybe three jurors

15     who have conflicts.

16               MR. PIERCE:  My view would be to just bring them back

17     on Tuesday.  It seems like it works for pretty much everyone.

18     It would screw up probably some serious travel plans and the

19     holiday weekend for at least two of them, it sounded like.

20               THE COURT:  What's the government's position?

21               MR. MCCAULEY:  Can we have a moment to talk, Your

22     Honor?

23               THE COURT:  Sure.  And the other benefit to this is I

24     do think we keep everybody happy here.  Some of these things I

25     would say you can't -- you just have to miss some of this, but

```
1    the personal trip back for family, that's Thursday through

2    Monday.

3         Go ahead.  I will give you as long as you need.

4              MR. MCCAULEY:  Actually, Your Honor, can we step out?

5              THE COURT:  Absolutely.  But I do think -- you all

6    agree we would be losing three on Friday.

7              MS. MILLER:  Yes, we heard that.

8              MR. MCCAULEY:  And intermittently leading up to that

9    point.

10             THE COURT:  The doctor's appointment could be

11   rescheduled, she said.

12             MS. MILLER:  For tomorrow's she said could be?  I

13   think she said Wednesday and Friday.

14             THE COURT:  Right.  And we're losing -- we're losing

15   the funeral definitely tomorrow.

16             MR. MCCAULEY:  I counted about half with conflicts on

17   Friday.

18             THE COURT:  Take your time.

19        (Pause.)

20             MS. MILLER:  I think we're fine with adjourning until

21   Tuesday at 10:00.

22             THE COURT:  Is the defense okay with that?

23             MR. PIERCE:  Yes, Your Honor.

24             THE COURT:  Is that the only issue we have to deal

25   with?  So we will dismiss them.
```

1       Also, I want you to call the juror who is an alternate and
2   let her know that things are still going on and even into next
3   week, just so she's not thinking we forgot to call her.
4       Okay.  We will bring them in, and I'll adjourn them today
5   until 10:00 a.m. on Tuesday.
6           MS. MILLER:  Well, then there is the verdict on one
7   count question.
8           THE COURT:  Right.  I will tell them I won't take the
9   verdict now.
10      (Jury entered courtroom.)
11          THE COURT:  Good evening, everyone, and thank you for
12  your patience.  It was very helpful to talk to each of you
13  individually.
14      What we've decided is, I hope, good news for all of you.
15  We are going to adjourn for today, and we will come back Tuesday
16  at 10:00 a.m. to continue the deliberations, and that will
17  accommodate, I think, most of the conflicts that have been
18  raised.  And so you can expect to continue into next week.
19      Any questions about that?
20          JUROR:  Just what time on Tuesday?
21          THE COURT:  Tuesday at 10:00 a.m.
22      And there was also a question, a note that you all gave us
23  about having a decision on one count and whether we could take
24  that verdict now.  I'm going to refrain from doing that now and
25  let you continue to deliberate next week on the other counts.

1    All right?  If there aren't any other questions, I will

2    excuse you until Tuesday at 10:00 a.m.  You should expect every

3    other day to be deliberating from 9:30 to 5:30.  All right?

4    And if there are any issues, you need to let us know ahead

5    of time.  I can't promise we can accommodate them, but I do want

6    to know immediately if you have a conflict.

7    Thank you, ladies and gentlemen.  Have a good Memorial Day

8    weekend.

9    (Jury exited courtroom.)

10    THE COURT:  All right.  Anything else?

11    MS. MILLER:  No, Your Honor.

12    MR. PIERCE:  No, Your Honor.

13    THE COURT:  Enjoy the break.

14    (Proceedings adjourned at 5:59 p.m.)

CERTIFICATE OF OFFICIAL COURT REPORTER

     I, Sara A. Wick, certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.


/s/ Sara A. Wick                          August 10, 2023

SIGNATURE OF COURT REPORTER               DATE

# #

**#172** [1] - 1:18

# '

**'act** [4] - 14:22, 17:24, 24:3, 30:11
**'assault** [1] - 17:25
**'assault'** [5] - 14:23, 18:3, 21:25, 24:4, 30:13
**'intent'** [5] - 19:7, 27:22, 28:11, 29:8, 30:19
**'intentionally'** [5] - 19:6, 19:13, 26:25, 27:20, 30:18

# /

**/s** [1] - 55:8

# 1

**1** [6] - 29:6, 32:24, 39:18, 40:7, 41:25, 51:6
**10** [4] - 16:20, 47:5, 47:17, 55:8
**1014(a** [1] - 5:25
**10:00** [9] - 13:14, 35:7, 44:9, 51:11, 52:21, 53:5, 53:16, 53:21, 54:2
**11** [16] - 17:21, 19:5, 20:5, 24:18, 26:24, 27:2, 27:3, 27:20, 27:22, 28:6, 28:11, 29:7, 30:18, 30:20, 47:18, 48:15
**111** [2] - 18:17, 22:25
**111(a)(1** [1] - 17:4
**1114(a** [1] - 5:15
**113** [1] - 26:14
**11:00** [1] - 14:4
**11:12** [1] - 3:16
**11:20** [1] - 8:25
**11:31** [1] - 8:25
**11:41** [2] - 14:21, 30:16
**11:45** [1] - 30:17
**12** [3] - 16:21, 48:16, 49:10
**12:00** [1] - 20:13
**12:24** [1] - 20:13
**12:31** [1] - 28:17
**12:46** [1] - 31:25
**13** [2] - 49:11, 50:2
**14** [2] - 50:3, 51:4

**15** [1] - 8:19
**1512** [1] - 24:19
**15:05:29** [2] - 7:24, 8:3
**15:07:19** [1] - 7:24
**15:12:45** [2] - 8:3, 8:8
**1752** [2] - 16:13, 16:17
**17:15:42** [1] - 8:10
**18** [7] - 5:14, 5:25, 6:2, 16:8, 16:15, 18:17, 21:8
**183** [2] - 7:2, 7:5
**183-1** [2] - 7:8, 8:21

# 2

**2** [4] - 29:7, 30:16, 42:1, 43:12
**20** [13] - 14:24, 17:13, 18:2, 19:6, 19:12, 19:24, 20:19, 21:20, 22:17, 24:5, 26:25, 30:14, 30:19
**20001** [1] - 1:22
**2011** [1] - 21:2
**202-354-3284** [1] - 1:23
**2023** [2] - 1:6, 55:8
**20579** [1] - 1:15
**21-552** [1] - 2:4
**21-cr-00107** [1] - 1:16
**21-cr-552** [1] - 1:3
**21550** [1] - 1:17
**23** [1] - 1:6
**236** [3] - 7:11, 7:22, 8:21
**236A** [3] - 7:2, 8:1, 8:21
**23rd** [1] - 14:4
**24** [2] - 19:8, 28:2
**25** [7] - 14:23, 16:19, 17:6, 17:18, 17:24, 24:4, 30:12
**285** [1] - 21:23

# 3

**3** [9] - 3:21, 5:23, 10:13, 10:16, 11:6, 12:20, 12:22, 14:4, 14:8
**31** [1] - 26:14
**333** [1] - 1:21
**3:00** [2] - 48:3, 48:4

# 4

**4** [3] - 10:16, 43:13, 44:19
**4.100** [1] - 21:25

**40** [7] - 16:12, 18:21, 20:22, 21:1, 21:4, 23:11
**4704-B** [1] - 1:22

# 5

**5** [2] - 10:16, 42:14
**5104** [4] - 20:22, 21:1, 21:13, 22:25
**5104(a)(2** [1] - 21:4
**5104(e)(2)(F** [1] - 16:18
**559** [1] - 26:14
**5:00** [1] - 42:22
**5:23** [1] - 31:25
**5:24** [1] - 34:13
**5:30** [6] - 13:7, 29:24, 31:14, 31:17, 42:24, 54:3
**5:59** [1] - 54:14
**5th** [1] - 46:19

# 6

**6** [7] - 10:16, 32:7, 32:20, 32:22, 33:20, 34:24, 36:9
**601** [1] - 1:14
**6151422** [1] - 21:2

# 7

**7** [12] - 1:9, 3:22, 5:23, 10:13, 10:16, 11:6, 12:20, 12:23, 14:5, 14:9, 44:20, 45:15
**76** [1] - 5:21

# 8

**8** [4] - 21:6, 21:9, 45:16, 46:11
**8:00** [2] - 43:23, 43:24
**8:30** [1] - 42:19

# 9

**9** [3] - 42:14, 46:12, 47:4
**91367** [1] - 1:18
**9:00** [5] - 40:17, 42:21, 44:3, 44:6, 44:8
**9:13** [1] - 1:6
**9:15** [1] - 3:16
**9:30** [3] - 3:3, 42:21, 54:3

# A

**a.m** [16] - 1:6, 3:16, 8:25, 13:14, 14:4, 40:17, 44:6, 48:3, 48:4, 51:11, 53:5, 53:16, 53:21, 54:2
**ability** [1] - 15:24, 18:5, 22:2
**able** [5] - 7:15, 32:15, 41:11, 42:19, 50:20
**above-entitled** [1] - 55:5
**absent** [1] - 23:2
**absolutely** [2] - 45:14, 52:5
**accept** [1] - 24:13
**acceptable** [1] - 27:5
**accidentally** [1] - 26:19
**accommodate** [3] - 51:6, 53:17, 54:5
**account** [1] - 38:6
**act** [16] - 15:17, 15:18, 15:19, 17:1, 17:2, 17:6, 19:25, 20:1, 20:4, 23:21, 23:22, 25:22, 26:17, 27:7, 27:10
**acted** [8] - 16:1, 18:10, 19:13, 27:3, 27:13, 28:12, 29:10, 30:22
**Action** [1] - 2:4
**actual** [2] - 15:13, 20:1
**add** [1] - 37:14
**additional** [2] - 39:1, 41:16
**address** [2] - 2:24, 29:25
**adjourn** [2] - 53:4, 53:15
**adjourned** [1] - 54:14
**adjourning** [1] - 52:20
**admitted** [2] - 7:5, 7:6
**afraid** [1] - 13:17
**afternoon** [17] - 13:8, 32:12, 32:23, 40:8, 40:9, 42:2, 42:3, 43:14, 43:15, 43:23, 44:21, 45:17, 46:13, 47:6, 47:19, 48:17
**ago** [2] - 23:16
**agree** [21] - 7:9, 8:4, 9:23, 11:13, 15:2, 16:4, 16:25, 17:14, 17:17, 23:15, 23:21, 25:20, 26:11, 26:23, 30:5, 30:6, 34:12, 38:8, 38:13, 39:8, 52:6

**agreed** [2] - 6:21, 8:22
**agreement** [5] - 7:1, 7:5, 8:13, 8:14, 26:22
**ahead** [3] - 6:20, 52:3, 54:4
**aided** [1] - 1:25
**almost** [1] - 10:23
**alternate** [11] - 13:18, 33:17, 33:18, 34:1, 34:4, 34:6, 35:18, 35:19, 35:20, 51:13, 53:1
**ambiguous** [3] - 9:25, 11:14, 11:25
**amenable** [1] - 51:9
**AMERICA** [1] - 1:3
**America** [1] - 2:4
**amount** [1] - 32:5
**answer** [21] - 4:4, 10:10, 10:24, 14:18, 14:8, 15:1, 17:5, 20:18, 24:2, 24:6, 24:8, 26:24, 27:9, 28:24, 29:2, 29:6, 29:7, 30:15, 30:20, 31:11, 32:4
**answering** [1] - 17:20
**anticipate** [1] - 37:6
**anticipated** [1] - 37:12
**anyway** [1] - 20:9
**apparent** [4] - 15:24, 18:5, 21:6
**appearance** [1] - 39:6
**APPEARANCES** [1] - 1:12
**apply** [1] - 28:4
**appointment** [3] - 48:22, 48:23, 52:10
**appointments** [1] - 40:1
**appreciate** [2] - 45:8, 50:25
**approach** [2] - 2:6, 33:3
**approved** [1] - 26:20
**area** [1] - 43:4
**argument** [1] - 5:18
**arise** [2] - 41:6, 42:11
**arm** [1] - 25:2
**aside** [1] - 23:4
**assault** [43] - 4:14, 5:23, 9:17, 10:5, 10:11, 10:18, 15:3, 15:14, 15:18, 15:19, 15:20, 15:21, 15:22, 15:25, 16:14, 16:16, 17:1, 17:4, 17:10, 17:12, 17:17, 18:1, 18:9, 18:20, 18:21,

18:23, 19:12, 20:15,
20:22, 20:24, 21:1,
21:6, 21:13, 21:18,
22:4, 23:17, 23:20,
23:22, 24:14, 24:23,
25:23
**assaulted** [2] - 9:18,
10:6
**assaulting** [1] - 10:17
**assaults** [1] - 10:14
**assisting** [15] - 3:23,
4:2, 4:13, 4:18, 5:15,
9:19, 9:21, 10:7,
11:8, 11:16, 12:5,
12:17, 12:24, 14:6,
14:10
**assume** [1] - 4:18
**attempt** [3] - 15:22,
18:4, 22:1
**attempted** [2] - 18:6,
18:7
**attend** [1] - 35:15
**attending** [1] - 36:3
**Attorney's** [1] - 1:14
**August** [1] - 55:8
**AUSA** [2] - 1:13, 1:13
**authority** [1] - 23:2
**Avenue** [1] - 1:21
**avoid** [1] - 39:6

## B

**BEFORE** [2] - 1:1, 1:9
**began** [1] - 6:21
**begin** [1] - 51:10
**behalf** [2] - 2:10, 2:13
**benefit** [1] - 51:23
**better** [1] - 13:23
**beyond** [3] - 16:1,
18:9, 22:5
**big** [2] - 21:22, 50:23
**bit** [1] - 32:5
**blank** [1] - 7:13
**board** [1] - 25:19
**bodily** [1] - 23:23
**body** [4] - 7:9, 7:23,
8:1, 8:8
**body-worn** [2] - 7:23,
8:1
**borrow** [1] - 28:3
**bottom** [2] - 8:9, 22:13
**break** [1] - 54:13
**Brianna** [1] - 2:11
**bridal** [1] - 49:18
**brief** [2] - 6:17, 21:15
**briefed** [1] - 21:22
**bring** [16] - 13:6,
13:15, 32:2, 32:21,
32:24, 33:17, 33:20,
34:16, 35:18, 36:23,

39:3, 39:11, 40:3,
51:12, 51:16, 53:4
**bringing** [3] - 47:21,
48:19, 50:6
**broader** [2] - 17:10,
24:7
**building** [1] - 19:9
**buildings** [1] - 21:5
**builds** [1] - 17:7
**bunch** [1] - 37:10
**burial** [2] - 35:12,
36:16

## C

**calendar** [5] - 43:17,
47:7, 47:22, 49:16,
49:17
**calendars** [4] - 38:24,
39:25, 48:20, 50:7
**California** [1] - 1:18
**cam** [2] - 7:9, 8:8
**camera** [2] - 7:23, 8:2
**cancel** [1] - 48:25
**candidly** [1] - 38:24
**Capitol** [1] - 19:8
**card** [1] - 28:16
**care** [2] - 25:6, 32:16
**carefully** [1] - 38:24
**case** [12] - 4:16, 4:17,
4:24, 5:3, 5:13,
20:20, 20:21, 22:22,
25:7, 26:14, 33:13,
35:17
**Case** [1] - 1:3
**cautious** [1] - 42:12
**certainly** [3] - 4:14,
31:19, 37:2
**CERTIFICATE** [1] -
55:1
**certify** [1] - 55:3
**cetera** [3] - 17:19,
24:19, 27:7
**chairs** [1] - 40:12
**chambers** [1] - 8:19
**chance** [2] - 39:20,
40:4
**change** [3] - 19:21,
41:3, 41:4
**changed** [2] - 6:13,
20:17
**charge** [3] - 9:17,
16:14, 24:20
**charges** [2] - 4:15,
10:5
**check** [1] - 41:2
**Circuit** [2] - 26:14,
26:20
**circuits** [1] - 25:3
**cite** [2] - 5:13, 5:14

**cited** [2] - 4:23, 5:3
**clarify** [1] - 8:20
**clarity** [1] - 11:19
**cleanest** [1] - 28:23
**clear** [6] - 10:1, 11:19,
23:7, 24:15, 34:13,
46:23
**clearly** [1] - 23:19
**clerk** [2] - 6:25, 22:21
**close** [2] - 2:25, 36:17
**co** [1] - 2:14
**co-counsel** [1] - 2:14
**code** [3] - 5:25, 6:1,
16:6
**Code** [2] - 16:8, 20:8
**colleague** [1] - 50:13
**collection** [1] - 21:4
**COLUMBIA** [1] - 1:1
**Columbia** [1] - 21:24
**coming** [4] - 44:25,
46:16, 48:21, 50:11
**commas** [1] - 9:11
**committed** [4] - 15:25,
18:8, 20:4, 22:4
**committee** [2] - 29:13,
30:25
**common** [6] - 18:19,
20:10, 21:17, 21:19,
21:21, 21:23
**computer** [2] - 1:25,
5:8
**computer-aided** [1] -
1:25
**concept** [3] - 20:6,
24:17, 24:24
**concepts** [1] - 23:20
**concerned** [4] - 23:1,
24:12, 35:17, 38:4
**concerns** [3] - 25:4,
25:6, 33:3
**conduct** [8] - 19:8,
19:11, 27:5, 28:13,
29:11, 29:12, 30:23,
30:25
**conferring** [1] - 37:15
**confident** [1] - 18:22
**conflict** [4] - 37:5,
40:15, 42:20, 54:6
**conflicts** [25] - 30:1,
35:23, 37:2, 37:5,
38:5, 42:9, 43:20,
44:11, 44:25, 45:19,
45:20, 46:4, 46:15,
46:17, 47:9, 47:23,
48:8, 48:21, 49:16,
50:9, 51:8, 51:15,
52:16, 53:17
**conform** [1] - 25:6
**confusing** [1] - 23:18
**Congress** [9] - 19:11,

29:11, 29:12, 29:13,
29:14, 30:24, 31:1
**connected** [1] - 21:1
**connection** [1] - 21:5
**conscientious** [1] -
13:20
**consciously** [4] -
19:14, 20:3, 25:1,
26:18
**consider** [2] - 23:13,
24:7
**considering** [3] - 19:6,
27:1, 30:19
**consistently** [1] - 20:8
**conspiracy** [2] -
26:15, 26:21
**Constitution** [1] - 1:21
**consult** [3] - 6:23,
39:25, 40:5
**contact** [1] - 3:14
**continue** [7] - 6:23,
14:14, 35:15, 41:12,
53:16, 53:18, 53:25
**contradictory** [1] -
22:12
**convey** [1] - 38:9
**core** [1] - 15:11
**correct** [3] - 7:2, 31:4,
55:4
**counsel** [1] - 2:14
**Counsel** [2] - 20:14,
29:24
**Count** [17] - 16:20,
16:21, 17:6, 17:21,
19:5, 20:5, 24:18,
26:24, 27:2, 27:3,
27:20, 27:22, 28:6,
28:11, 29:7, 30:18,
30:20
**count** [6] - 10:11,
23:18, 27:20, 34:17,
53:7, 53:23
**counted** [1] - 52:16
**Counts** [9] - 3:21,
5:23, 10:13, 10:16,
11:6, 12:20, 12:22,
14:4, 14:8
**counts** [4] - 23:20,
33:23, 34:14, 53:25
**County** [7] - 3:22,
5:17, 11:7, 12:15,
12:23, 14:5, 14:9
**couple** [3] - 36:4,
46:21, 50:11
**coupled** [3] - 15:23,
18:5, 22:2
**course** [3] - 9:15,
36:11, 37:21
**COURT** [234] - 1:1,
2:12, 2:15, 2:20, 3:3,

3:11, 3:18, 4:6, 4:8,
4:11, 4:16, 4:20, 5:1,
5:6, 5:9, 5:11, 5:13,
5:22, 6:4, 6:7, 7:4,
7:11, 7:20, 8:4, 8:11,
8:14, 8:16, 8:22,
8:24, 9:2, 9:6, 9:12,
9:25, 10:4, 10:13,
10:19, 10:25, 11:5,
11:17, 11:20, 11:25,
12:8, 12:13, 12:22,
13:4, 13:6, 13:14,
13:23, 14:1, 14:16,
14:20, 15:2, 15:6,
15:8, 15:16, 16:10,
16:11, 16:17, 16:21,
16:25, 17:9, 17:14,
17:20, 18:14, 18:18,
18:22, 19:2, 19:19,
20:2, 20:7, 20:14,
21:8, 21:11, 21:19,
22:7, 22:12, 22:21,
23:1, 23:11, 23:14,
23:21, 24:21, 24:25,
25:3, 25:13, 25:16,
25:20, 26:4, 26:10,
26:13, 27:8, 27:13,
27:16, 27:22, 28:2,
28:10, 28:22, 29:1,
29:6, 29:18, 29:22,
30:6, 30:9, 31:13,
31:17, 31:21, 31:23,
32:2, 32:20, 33:5,
33:10, 33:15, 33:22,
34:5, 34:13, 34:23,
34:25, 35:2, 35:6,
35:8, 35:10, 35:14,
35:22, 36:7, 36:10,
36:23, 37:1, 37:6,
37:16, 37:21, 38:2,
38:9, 38:18, 39:3,
39:9, 39:13, 39:17,
40:3, 40:8, 40:10,
40:12, 40:14, 40:18,
40:20, 40:22, 40:25,
41:5, 41:8, 41:11,
41:14, 41:17, 41:19,
41:24, 42:2, 42:4,
42:9, 42:11, 42:15,
42:21, 42:24, 43:1,
43:7, 43:11, 43:14,
43:16, 43:22, 43:24,
44:2, 44:4, 44:6,
44:9, 44:11, 44:13,
44:16, 44:21, 45:4,
45:8, 45:12, 45:17,
45:24, 46:1, 46:3,
46:6, 46:9, 46:13,
46:21, 46:23, 47:2,
47:6, 47:11, 47:15,
47:19, 47:21, 47:25,

48:2, 48:4, 48:6, 48:8, 48:10, 48:14, 48:17, 48:19, 48:24, 49:1, 49:4, 49:8, 49:12, 49:14, 49:19, 49:21, 49:24, 50:1, 50:4, 50:6, 50:16, 50:19, 50:22, 50:24, 51:5, 51:20, 51:23, 52:5, 52:10, 52:14, 52:18, 52:22, 52:24, 53:8, 53:11, 53:21, 54:10, 54:13, 55:1, 55:9
**court** [1] - 18:22
**Court** [7] - 1:21, 6:17, 21:3, 23:2, 24:6, 24:8, 26:5
**Court's** [1] - 35:24
**courthouse** [1] - 2:25
**courtroom** [33] - 13:25, 14:15, 29:3, 30:8, 31:4, 31:6, 31:12, 34:24, 36:9, 40:7, 41:25, 42:1, 43:12, 43:13, 44:19, 44:20, 45:15, 45:16, 46:11, 46:12, 47:4, 47:5, 47:17, 47:18, 48:15, 48:16, 49:10, 49:11, 50:2, 50:3, 51:4, 53:10, 54:9
**COURTROOM** [4] - 2:3, 13:22, 29:21, 35:1
**crime** [3] - 24:12, 25:9, 26:15
**crimes** [1] - 25:21
**criminal** [2] - 21:17, 21:24
**Criminal** [1] - 2:3
**CRR** [1] - 1:21
**crystal** [1] - 23:7
**Cua** [2] - 21:16, 21:22
**curious** [1] - 41:8
**cut** [3] - 7:7, 8:8, 37:21

**D**

**D.C** [13] - 1:5, 1:15, 1:22, 3:22, 5:17, 11:7, 12:15, 12:23, 14:5, 14:9, 21:17, 26:13, 43:3
**DABNEY** [1] - 1:9
**damage** [1] - 23:24
**DATE** [1] - 55:9
**dated** [1] - 14:3
**days** [8] - 33:16, 38:7, 38:16, 38:25, 39:2,

39:5, 42:6, 44:22
**deal** [3] - 13:7, 31:6, 52:24
**dealing** [2] - 23:20, 38:11
**death** [1] - 23:23
**decide** [11] - 4:3, 4:11, 9:22, 10:1, 11:1, 11:10, 11:21, 12:14, 12:18, 13:1, 14:12
**decided** [2] - 6:19, 53:14
**decision** [7] - 20:23, 21:12, 33:23, 34:14, 34:17, 37:7, 53:23
**decisions** [1] - 33:9
**defendant** [19] - 15:25, 16:1, 18:8, 18:10, 19:9, 19:13, 20:3, 22:4, 22:5, 22:9, 22:14, 26:5, 27:3, 27:10, 27:13, 28:12, 29:9, 30:22
**Defendant** [2] - 1:7, 1:16
**defendant's** [1] - 6:4
**defense** [10] - 2:18, 7:20, 8:4, 14:25, 15:8, 16:25, 19:19, 20:17, 34:10, 52:22
**Defense** [1] - 8:1
**define** [2] - 19:12, 21:18
**defined** [11] - 15:18, 15:22, 16:14, 16:15, 18:23, 20:2, 20:7, 20:8, 25:18, 26:3, 26:16
**definitely** [3] - 36:5, 39:8, 52:15
**definition** [33] - 5:15, 12:7, 14:22, 15:17, 15:20, 17:2, 17:3, 17:6, 17:13, 17:23, 17:24, 18:18, 18:21, 19:5, 19:22, 19:23, 20:19, 20:22, 21:3, 21:20, 22:3, 23:5, 23:19, 24:1, 24:3, 24:7, 25:8, 25:25, 26:25, 28:4, 30:11, 30:18
**definitions** [8] - 14:24, 17:1, 18:2, 18:3, 23:2, 23:17, 24:5, 30:13
**degree** [1] - 21:15
**degrees** [1] - 37:5
**delays** [1] - 42:18
**deliberate** [2] - 37:9,

53:25
**deliberating** [6] - 3:4, 3:5, 36:3, 36:4, 37:8, 54:3
**deliberation** [2] - 29:13, 30:25
**deliberations** [6] - 6:22, 14:14, 35:16, 35:19, 51:10, 53:16
**deliver** [2] - 33:23, 34:15
**delivering** [1] - 34:2
**deputy** [3] - 29:3, 31:4, 31:6
**DEPUTY** [4] - 2:3, 13:22, 29:21, 35:1
**deserves** [1] - 11:18
**destruction** [1] - 23:24
**determined** [1] - 7:22
**difference** [1] - 21:22
**different** [10] - 7:16, 9:3, 18:13, 19:1, 22:19, 25:8, 33:12, 34:10, 35:25, 37:5
**differs** [1] - 22:3
**digest** [1] - 19:17
**direct** [1] - 10:24
**directly** [2] - 11:2, 27:9
**disagree** [1] - 23:5
**disagreeing** [1] - 18:25
**discussing** [1] - 20:24
**discussion** [3] - 3:20, 6:18, 33:7
**discussions** [1] - 6:23
**dismiss** [3] - 32:21, 32:22, 52:25
**disorderly** [1] - 19:8
**dispute** [2] - 6:18, 8:16
**disputed** [1] - 7:1
**disrupt** [9] - 19:10, 24:21, 25:22, 26:6, 27:4, 27:14, 28:13, 29:10, 30:23
**DISTRICT** [3] - 1:1, 1:1, 1:10
**District** [1] - 21:24
**disturb** [8] - 19:10, 24:22, 25:22, 27:4, 27:14, 28:13, 29:10, 30:23
**doctor's** [3] - 48:22, 48:23, 52:10
**done** [5] - 15:14, 15:15, 26:18, 37:18, 42:18
**doors** [1] - 42:23

**doubt** [3] - 16:1, 18:9, 22:5
**down** [6] - 3:10, 5:10, 7:7, 13:18, 22:7, 41:20
**drafted** [1] - 13:23
**drive** [1] - 28:20
**driving** [3] - 35:9, 36:3, 44:4
**during** [2] - 49:19, 49:21
**duty** [1] - 15:24, 32:9

**E**

**E.D.VA** [1] - 20:23
**Eastern** [4] - 7:24, 7:25, 8:3
**easy** [1] - 40:6
**eat** [1] - 29:23
**ECF** [2] - 5:21, 21:23
**Eighth** [1] - 25:5
**either** [14] - 3:12, 4:12, 9:6, 9:18, 10:6, 12:2, 12:4, 26:4, 29:11, 29:13, 30:24, 31:1, 32:22, 36:18
**either/or** [4] - 9:5, 11:14, 11:24, 12:4
**element** [9] - 4:14, 9:17, 10:5, 25:9, 27:2, 28:5, 28:14, 29:9, 30:21
**elements** [2] - 10:16, 25:7
**emergencies** [3] - 41:6, 42:4, 44:24
**employee** [1] - 5:16
**enable** [1] - 32:6
**encourage** [1] - 41:21
**end** [3] - 38:16, 45:2, 45:5
**ending** [1] - 8:9
**enjoy** [1] - 54:13
**entered** [15] - 13:25, 30:8, 34:24, 40:7, 42:1, 43:13, 44:20, 45:16, 46:12, 47:5, 47:18, 48:16, 49:11, 50:3, 53:10
**entirely** [1] - 19:1
**entitled** [1] - 55:5
**equate** [1] - 25:13
**equating** [1] - 26:12
**especially** [3] - 33:11, 38:14, 50:8
**ESQ** [2] - 1:16, 1:16
**essentially** [1] - 23:5
**establish** [1] - 25:8
**et** [3] - 17:19, 24:19,

27:7
**evening** [8] - 35:1, 35:2, 40:19, 48:2, 49:12, 50:4, 50:5, 53:11
**evidence** [2] - 28:16, 36:21
**example** [1] - 22:16
**except** [1] - 18:25
**excuse** [9] - 3:6, 13:10, 13:17, 14:13, 29:24, 31:9, 35:24, 36:23, 54:2
**excused** [2] - 13:15, 30:4
**excusing** [4] - 35:17, 38:6, 38:21, 51:10
**Exhibit** [5] - 7:2, 7:8, 7:22, 8:1
**exhibit** [3] - 3:13, 7:7, 32:15
**exhibits** [10] - 2:21, 3:13, 3:19, 6:18, 6:19, 6:20, 6:22, 7:1, 8:17, 8:21
**exited** [15] - 14:15, 31:12, 36:9, 41:25, 43:12, 44:19, 45:15, 46:11, 47:4, 47:17, 48:15, 49:10, 50:2, 51:4, 54:9
**expect** [3] - 37:2, 53:18, 54:2
**experience** [1] - 21:10
**experienced** [1] - 34:11
**explain** [1] - 33:1
**explore** [1] - 34:3
**expressed** [1] - 25:4
**extent** [1] - 9:25
**extra** [2] - 32:5, 38:16
**eye** [2] - 27:24, 27:25

**F**

**F.2d** [1] - 26:14
**fact** [1] - 6:5
**factual** [12] - 4:3, 4:6, 4:10, 6:11, 11:1, 11:9, 11:20, 12:11, 12:14, 12:18, 12:25, 14:11
**fair** [1] - 10:19
**fall** [1] - 12:6
**family** [5] - 32:24, 32:25, 36:11, 40:21, 52:1
**far** [1] - 31:13
**feasible** [1] - 32:22
**few** [2] - 32:12, 39:20

**figure** [2] - 46:16, 47:8
**fill** [1] - 27:21
**final** [3] - 2:16, 31:2
**fine** [9] - 10:20, 25:18, 26:12, 26:23, 39:16, 42:25, 47:20, 48:18, 52:20
**first** [18] - 3:21, 4:23, 5:1, 9:16, 9:23, 10:5, 10:16, 10:22, 11:4, 11:23, 20:15, 21:3, 24:2, 24:10, 28:20, 30:3, 30:11, 30:16
**five** [2] - 3:11, 9:20
**fix** [1] - 28:18
**Floor** [1] - 1:18
**fly** [1] - 40:16
**flying** [2] - 44:4, 44:5
**folks** [1] - 31:13
**follow** [1] - 39:21
**follow-up** [1] - 39:21
**following** [3] - 11:17, 50:15, 50:16
**FOR** [1] - 1:1
**force** [2] - 18:6, 51:13
**forcibly** [2] - 16:1, 18:10
**foregoing** [1] - 55:3
**foreperson** [2] - 14:21, 40:13
**forgot** [1] - 53:3
**formal** [1] - 15:3
**fourth** [2] - 28:15, 31:5
**frame** [1] - 7:6
**Friday** [22] - 35:22, 36:24, 37:7, 38:7, 41:9, 43:21, 43:22, 43:24, 45:22, 45:25, 47:24, 47:25, 48:1, 48:4, 48:22, 49:1, 49:18, 51:8, 51:14, 52:6, 52:13, 52:17
**FRIEDRICH** [1] - 1:9
**full** [1] - 7:5
**funeral** [12] - 13:8, 13:9, 13:13, 32:8, 32:11, 33:12, 33:15, 35:4, 35:6, 35:15, 36:3, 52:15

## G

**gain** [1] - 13:16
**general** [2] - 24:25, 37:17
**generally** [3] - 11:15, 11:16, 12:6
**gentlemen** [4] - 14:2, 30:9, 31:8, 54:7
**George's** [1] - 5:17

**given** [5] - 21:20, 25:6, 38:18, 42:4, 51:5
**government** [12] - 2:8, 2:17, 4:20, 6:12, 9:16, 10:5, 15:2, 16:4, 17:14, 23:4, 31:21, 33:5
**government's** [8] - 18:18, 24:6, 25:10, 27:16, 32:15, 37:13, 38:12, 51:20
**graduation** [1] - 45:23
**grandfather** [2] - 35:3, 36:17
**grant** [1] - 33:2
**great** [1] - 28:8
**grounds** [1] - 19:9
**group** [2] - 39:4, 39:11
**guarantee** [1] - 42:19
**guess** [3] - 6:8, 24:18, 50:14

## H

**haldeman** [1] - 26:14
**half** [4] - 9:23, 9:24, 37:24, 52:16
**hand** [2] - 12:9, 13:21
**happy** [1] - 51:24
**hard** [2] - 9:9, 30:10
**hard-working** [1] - 30:10
**hardest** [1] - 15:11
**harm** [2] - 23:23, 39:13
**head** [3] - 3:1, 3:2, 32:19
**heads** [1] - 40:4
**hear** [2] - 3:25, 35:3
**heard** [2] - 2:17, 52:7
**hearing** [3] - 29:12, 30:2, 30:25
**helpful** [1] - 53:12
**high** [1] - 45:23
**Hills** [1] - 1:18
**hold** [1] - 29:22
**holiday** [8] - 43:19, 44:23, 45:19, 46:15, 47:8, 47:23, 50:8, 51:19
**home** [2] - 40:21, 40:23
**Honor** [63] - 2:3, 2:9, 3:8, 4:22, 5:7, 5:21, 7:3, 7:8, 7:16, 8:15, 10:2, 10:21, 10:22, 12:12, 12:19, 13:3, 13:5, 15:5, 16:5, 18:12, 19:17, 20:18, 20:20, 23:13, 23:15,

24:17, 27:19, 28:24, 29:16, 29:17, 30:5, 30:7, 31:16, 31:22, 32:18, 33:4, 34:21, 34:22, 37:4, 38:13, 41:16, 41:18, 44:14, 44:15, 45:10, 45:11, 46:7, 46:8, 46:25, 47:1, 47:13, 47:14, 48:13, 49:6, 49:7, 49:25, 51:2, 51:3, 51:22, 52:4, 52:23, 54:11, 54:12
**Honor's** [1] - 5:3
**HONORABLE** [1] - 1:9
**hope** [1] - 53:14
**Hopkins** [5] - 2:22, 3:14, 14:16, 29:19, 32:15
**hour** [2] - 29:23, 31:10
**hours** [2] - 32:12, 36:4
**house** [5] - 29:11, 29:13, 30:24, 31:1, 42:18

## I

**idea** [2] - 17:7, 24:19
**identify** [1] - 2:7
**imagine** [1] - 49:14
**immediately** [1] - 54:6
**immigration** [1] - 21:11
**impede** [13] - 18:15, 19:10, 24:18, 24:21, 25:22, 26:6, 27:4, 27:7, 27:11, 27:14, 28:13, 29:10, 30:23
**impeding** [1] - 10:18
**important** [1] - 24:16
**impression** [1] - 38:3
**inadvertently** [1] - 26:19
**inclination** [5] - 6:11, 24:13, 25:17, 30:3, 39:10
**inclined** [7] - 3:25, 9:16, 13:9, 25:12, 32:10, 34:8
**include** [3] - 10:10, 17:18, 21:25
**includes** [6] - 5:15, 15:17, 17:9, 17:10, 17:25, 22:19
**including** [2] - 22:10, 23:9
**inconsistent** [1] - 22:17
**incorporate** [1] - 18:14

**indicated** [1] - 8:7
**individual** [2] - 23:24, 38:19
**individually** [5] - 45:18, 46:14, 47:7, 49:15, 53:13
**individuals** [4] - 9:17, 9:20, 10:6, 10:7
**inflict** [8] - 15:23, 16:2, 18:4, 18:8, 18:11, 22:1, 22:9, 22:14
**infliction** [2] - 23:23
**influence** [1] - 47:3
**info** [1] - 3:14
**inform** [1] - 26:23
**information** [1] - 33:8
**informed** [2] - 6:25, 32:16
**initial** [1] - 24:13
**initials** [1] - 7:10
**injury** [11] - 15:23, 16:2, 18:4, 18:8, 18:11, 22:1, 22:9, 22:10, 22:15, 23:9
**Injury** [1] - 23:8
**inquiring** [1] - 41:20
**instead** [2] - 12:13, 25:14
**instruction** [23] - 14:22, 14:24, 16:19, 17:18, 17:24, 18:2, 19:6, 19:8, 19:12, 19:24, 20:3, 21:20, 21:24, 22:17, 23:8, 24:4, 24:5, 26:25, 28:2, 30:12, 30:14, 30:19
**instructions** [6] - 2:17, 5:3, 11:3, 20:10, 21:17, 25:4
**intend** [2] - 13:6, 25:1
**intended** [11] - 16:2, 18:10, 18:11, 19:24, 19:25, 22:5, 22:9, 22:14, 24:18
**intent** [21] - 19:10, 20:6, 20:7, 24:12, 24:18, 24:19, 24:21, 24:25, 25:4, 25:21, 25:22, 26:1, 26:7, 26:16, 26:21, 27:1, 27:4, 28:3, 28:4, 28:6, 30:20
**intentional** [4] - 15:22, 18:4, 22:1, 24:11
**intentionally** [12] - 19:23, 24:13, 24:24, 25:5, 25:18, 25:23, 25:25, 26:1, 26:2,

**indicated** column continues...

**interested** [2] - 30:2, 33:5
**interfere** [2] - 17:19, 18:15
**interim** [1] - 32:14
**intermittently** [1] - 52:8
**interpret** [1] - 18:20
**interpretation** [1] - 12:3
**interpreted** [1] - 36:17
**interpreting** [1] - 20:22
**intimidate** [2] - 17:18, 18:15
**intimidation** [1] - 17:10
**involving** [2] - 15:19, 23:22
**issue** [16] - 4:6, 4:10, 6:11, 11:1, 11:9, 11:20, 12:14, 13:8, 21:15, 24:11, 26:4, 31:3, 32:24, 39:18, 46:19, 52:24
**issues** [5] - 2:24, 3:12, 36:1, 49:2, 54:4
**IT** [1] - 28:18
**itself** [2] - 8:9, 17:6

## J

**JOHN** [1] - 1:16
**John** [2] - 1:17, 2:13
**joined** [1] - 2:10
**JOSEPH** [1] - 1:6
**Joseph** [1] - 2:13
**judge** [1] - 26:20
**JUDGE** [1] - 1:10
**jump** [1] - 28:20
**June** [3] - 45:3, 45:5, 46:19
**JUROR** [68] - 35:5, 35:7, 35:9, 35:12, 35:21, 36:5, 40:9, 40:11, 40:13, 40:16, 40:19, 40:21, 40:24, 41:2, 41:7, 41:10, 41:13, 41:23, 42:3, 42:8, 42:10, 42:13, 42:17, 42:22, 42:25, 43:5, 43:10, 43:15, 43:21, 43:23, 44:1, 44:3, 44:5, 44:8, 44:10, 44:12, 44:18, 45:2, 45:6, 45:14, 45:22, 45:25, 46:2, 46:5, 46:19, 46:22, 47:10, 47:20, 47:24,

48:1, 48:3, 48:5, 48:7, 48:9, 48:18, 48:22, 48:25, 49:3, 49:13, 49:18, 49:20, 49:23, 50:5, 50:11, 50:17, 50:20, 50:23, 53:20

**Juror** [2] - 47:4, 47:5

**juror** [42] - 13:8, 13:15, 30:3, 32:7, 32:20, 32:22, 32:24, 33:20, 34:24, 35:17, 35:23, 36:9, 36:10, 38:7, 39:18, 40:7, 41:20, 41:25, 42:1, 43:12, 43:13, 43:16, 44:19, 44:20, 44:22, 45:15, 45:16, 46:11, 46:12, 47:17, 47:18, 48:15, 48:16, 49:5, 49:10, 49:11, 50:2, 50:3, 51:4, 51:6, 53:1

**jurors** [17] - 29:25, 31:15, 32:3, 32:21, 33:11, 35:25, 37:1, 37:19, 39:4, 39:7, 41:6, 43:8, 44:17, 44:24, 46:16, 51:8, 51:14

**jury** [39] - 2:16, 2:23, 3:3, 3:5, 3:19, 4:1, 4:6, 5:23, 6:6, 6:21, 11:3, 11:9, 12:12, 12:14, 12:25, 13:6, 13:7, 13:10, 13:20, 14:11, 14:13, 19:5, 21:17, 21:24, 23:8, 24:2, 26:23, 27:3, 28:12, 29:9, 30:22, 31:2, 32:1, 37:8, 38:10, 42:5, 45:13, 46:10, 51:10

**Jury** [9] - 2:2, 3:17, 9:1, 13:25, 14:15, 30:8, 31:12, 53:10, 54:9

**JURY** [1] - 1:9

## K

**K.V** [2] - 7:10
**keep** [3] - 13:7, 39:21, 51:24
**KENNETH** [1] - 1:6
**Kenneth** [2] - 2:4, 2:13
**kind** [3] - 34:12, 36:16, 37:20
**knowingly** [4] - 19:14, 20:3, 20:8, 20:9

## L

**ladies** [4] - 14:1, 30:9, 31:8, 54:7
**land** [1] - 44:6
**language** [3] - 10:4, 20:10, 23:6
**last** [3] - 8:7, 13:18, 15:12
**late** [2] - 42:24, 43:23
**law** [13] - 4:9, 4:17, 5:20, 6:25, 20:21, 21:17, 21:19, 21:21, 21:23, 22:21, 25:7, 33:25
**Law** [1] - 1:17
**lawyers** [1] - 13:24
**leading** [1] - 52:8
**least** [8] - 16:13, 19:23, 31:19, 35:23, 36:4, 45:5, 51:14, 51:19
**leave** [3] - 38:19, 45:22, 45:24
**leaving** [3] - 43:21, 43:24, 48:3
**left** [2] - 33:18, 35:19
**length** [2] - 6:19, 7:7
**less** [1] - 21:6
**light** [1] - 26:22
**likely** [1] - 35:25
**lines** [1] - 24:24
**list** [1] - 3:13
**literally** [1] - 44:6
**lock** [1] - 42:23
**look** [8] - 4:24, 5:8, 6:9, 6:10, 6:13, 18:24, 20:11, 38:24
**looking** [5] - 7:11, 8:12, 9:4, 16:22, 24:11
**lose** [2] - 13:11, 37:10
**losing** [3] - 52:6, 52:14
**lunch** [6] - 29:20, 31:5, 31:6, 31:9, 31:10, 50:17

## M

**ma'am** [9] - 34:25, 43:14, 44:16, 45:17, 47:19, 48:9, 48:14, 48:17, 49:12
**mark** [2] - 7:12, 8:9
**matter** [4] - 4:8, 4:17, 5:20, 55:5
**matters** [2] - 5:22, 37:11
**McCauley** [2] - 2:10,

41:15
**MCCAULEY** [9] - 1:13, 7:3, 10:2, 32:19, 39:6, 51:21, 52:4, 52:8, 52:16
**mean** [10] - 4:11, 13:10, 16:10, 21:8, 26:1, 26:7, 34:2, 36:14, 38:3, 39:10
**meaning** [8] - 14:23, 15:3, 18:11, 19:7, 24:5, 27:1, 30:13, 30:19
**means** [19] - 18:3, 18:23, 19:13, 21:25, 22:10, 23:8, 23:22, 25:25, 26:16, 26:17, 26:18, 27:20, 27:23, 28:1, 28:6, 28:11, 29:8, 30:21, 35:18
**meeting** [1] - 50:13
**meetings** [1] - 50:14
**Mekowulu** [1] - 21:3
**Memorial** [4] - 38:25, 39:1, 43:3, 54:7
**mens** [1] - 20:6
**mental** [1] - 25:8
**mentally** [1] - 19:25
**met** [3] - 9:16, 10:5, 10:16
**Metro** [7] - 3:22, 5:17, 11:7, 12:15, 12:23, 14:5, 14:9
**microphone** [1] - 5:11
**might** [9] - 15:4, 16:21, 33:12, 34:1, 34:4, 34:6, 36:15, 37:9, 42:11
**MILLER** [84] - 1:13, 2:9, 3:1, 3:8, 4:22, 5:2, 5:7, 5:10, 5:12, 5:14, 5:24, 7:8, 7:15, 7:22, 8:20, 9:4, 9:23, 10:9, 10:15, 10:20, 11:13, 11:18, 11:23, 12:3, 12:20, 13:5, 13:12, 16:5, 16:11, 16:13, 16:19, 16:23, 17:15, 18:12, 18:16, 18:19, 18:24, 19:16, 20:20, 21:9, 21:12, 21:21, 22:8, 22:18, 22:24, 23:7, 23:12, 25:11, 25:14, 25:17, 25:24, 26:12, 27:17, 27:24, 28:8, 28:19, 28:24, 29:5, 29:17, 30:7, 31:22, 33:7, 33:11, 33:24, 34:22, 38:13, 38:23,

39:8, 39:24, 41:16, 43:2, 44:14, 45:10, 46:7, 46:25, 47:13, 49:7, 51:3, 52:7, 52:12, 52:20, 53:6, 54:11
**Miller** [3] - 2:10, 13:4, 41:14
**mind** [6] - 4:25, 5:8, 5:10, 6:13, 19:17, 40:22
**minute** [1] - 7:12
**minutes** [2] - 3:11, 8:19
**misdemeanor** [1] - 22:20
**miss** [6] - 32:11, 36:6, 36:17, 50:12, 50:19, 51:25
**model** [1] - 23:8
**moment** [7] - 4:24, 5:5, 23:16, 36:8, 42:10, 50:23, 51:21
**Monday** [4] - 40:19, 48:7, 48:8, 52:2
**morning** [12] - 2:9, 2:12, 2:15, 14:1, 32:23, 33:16, 34:25, 35:12, 42:18, 44:3, 45:25, 48:2
**most** [3] - 13:11, 51:7, 53:17
**mostly** [1] - 21:23
**motive** [2] - 26:9, 26:10
**move** [2] - 25:2, 37:24
**moving** [1] - 39:21
**MR** [79] - 2:13, 2:19, 3:2, 3:9, 4:4, 4:7, 4:10, 4:14, 4:19, 6:5, 7:3, 8:6, 8:12, 8:15, 8:23, 10:2, 10:12, 10:22, 11:2, 11:11, 12:10, 12:19, 13:3, 15:1, 15:4, 15:7, 15:10, 15:11, 17:5, 17:12, 19:21, 20:5, 20:18, 23:15, 24:15, 24:23, 25:1, 26:9, 26:11, 27:6, 27:9, 27:15, 29:16, 30:5, 31:16, 31:19, 32:18, 32:19, 33:4, 34:11, 34:21, 36:14, 36:25, 37:4, 37:14, 37:17, 37:23, 38:8, 39:6, 39:10, 39:15, 41:18, 43:6, 44:15, 45:11, 46:8, 47:1, 47:14, 48:13, 49:6, 49:25,

51:2, 51:16, 51:21, 52:4, 52:8, 52:16, 52:23, 54:12
**MS** [83] - 2:9, 3:1, 3:8, 4:22, 5:2, 5:7, 5:10, 5:12, 5:14, 5:24, 7:8, 7:15, 7:22, 8:20, 9:4, 9:9, 9:23, 10:9, 10:15, 10:20, 11:13, 11:18, 11:23, 12:3, 12:20, 13:5, 13:12, 16:5, 16:11, 16:13, 16:19, 16:23, 17:15, 18:12, 18:16, 18:19, 18:24, 19:16, 20:20, 21:9, 21:12, 21:21, 22:8, 22:18, 22:24, 23:7, 23:12, 25:11, 25:14, 25:17, 25:24, 26:12, 27:17, 27:24, 28:8, 28:19, 28:24, 29:5, 29:17, 30:7, 31:22, 33:7, 33:11, 33:24, 34:22, 38:13, 38:23, 39:8, 39:24, 41:16, 43:2, 44:14, 45:10, 46:7, 46:25, 47:13, 49:7, 51:3, 52:7, 52:12, 52:20, 53:6, 54:11
**multiple** [1] - 23:17
**must** [12] - 11:10, 12:14, 12:18, 15:25, 18:9, 22:4, 25:6, 26:5, 27:3, 28:12, 29:9, 30:22

## N

**narrower** [1] - 24:1
**nearby** [1] - 13:20
**Nebraska** [1] - 40:24
**necessarily** [2] - 17:8, 35:24
**necessary** [1] - 36:6
**need** [15] - 2:24, 3:9, 3:12, 5:4, 15:9, 29:22, 34:6, 35:18, 38:10, 39:25, 41:2, 50:20, 50:21, 52:3, 54:4
**needed** [3] - 19:9, 41:11, 50:12
**nephew's** [1] - 45:23
**never** [1] - 34:11
**new** [1] - 13:15
**news** [1] - 53:14
**next** [34] - 37:2, 37:9, 37:24, 38:5, 38:14, 38:22, 39:2, 39:5,

39:18, 40:2, 41:9,
41:12, 42:6, 42:15,
43:18, 43:20, 44:11,
44:22, 45:1, 45:21,
46:3, 46:4, 46:18,
47:8, 47:22, 48:20,
49:2, 49:16, 49:22,
50:7, 51:10, 53:2,
53:18, 53:25
**Ninth** [1] - 25:5
**none** [2] - 44:14, 46:7
**nonrefundable** [1] -
41:1
**Northwest** [2] - 1:14,
1:21
**note** [20] - 3:18, 3:21,
11:5, 13:19, 13:21,
14:3, 14:17, 14:20,
19:4, 25:3, 28:15,
30:11, 30:16, 30:17,
31:2, 31:3, 32:8,
32:14, 53:22
**noted** [1] - 5:16
**notes** [3] - 2:25,
29:23, 31:10
**nothing** [3] - 42:13,
49:23
**nothing's** [1] - 40:6
**nuanced** [1] - 25:8
**number** [45] - 9:10,
14:22, 14:24, 19:6,
21:24, 25:3, 26:25,
28:2, 29:6, 29:7,
30:12, 30:14, 30:16,
30:19, 32:7, 32:24,
33:20, 34:24, 35:25,
36:9, 39:18, 40:7,
41:25, 42:1, 43:12,
43:13, 44:19, 44:20,
45:15, 45:16, 46:11,
46:12, 47:4, 47:5,
47:17, 47:18, 48:15,
48:16, 49:10, 49:11,
50:2, 50:3, 51:4,
51:6, 51:7
**Number** [1] - 1:3
**numbers** [1] - 10:11

**O**

**objection** [3] - 28:10,
34:20, 34:21
**objections** [4] - 2:16,
2:19, 4:23, 5:2
**objects** [1] - 7:21
**obligations** [3] -
50:11, 50:14, 50:21
**obstruct** [3] - 24:18,
27:7, 27:11
**obviously** [7] - 7:17,

36:10, 36:15, 36:20,
37:4, 37:18, 38:1
**OF** [5] - 1:1, 1:3, 1:9,
55:1, 55:9
**offense** [4] - 22:11,
24:14, 29:9, 30:22
**offenses** [1] - 25:7
**offensive** [1] - 23:9
**Office** [1] - 1:14
**officer** [2] - 5:15, 9:19
**officers** [30] - 3:23,
4:1, 4:2, 4:12, 4:13,
4:18, 5:17, 9:18,
9:20, 9:21, 10:7,
10:17, 11:7, 11:8,
12:4, 12:5, 12:16,
12:17, 12:24, 14:6,
14:10
**Official** [1] - 1:21
**OFFICIAL** [1] - 55:1
**often** [1] - 15:10
**old** [1] - 16:23
**older** [1] - 16:22
**Omaha** [1] - 40:24
**OMB** [1] - 1:18
**one** [52] - 4:23, 4:24,
5:5, 7:1, 9:14, 9:15,
10:2, 12:3, 13:23,
15:8, 15:11, 16:12,
18:6, 20:15, 20:16,
20:19, 20:23, 21:14,
25:6, 27:17, 28:21,
29:24, 31:2, 31:19,
32:8, 32:14, 33:12,
33:23, 34:14, 34:17,
35:19, 35:23, 36:18,
38:18, 39:4, 39:5,
39:7, 39:13, 41:22,
42:5, 47:21, 48:19,
50:6, 53:6, 53:23
**one's** [1] - 37:11
**ongoing** [1] - 42:17
**open** [1] - 36:2
**opinion** [1] - 33:12
**oppose** [1] - 18:15
**opposed** [2] - 20:6,
25:22
**opposing** [1] - 10:17
**option** [2] - 38:22,
51:12
**order** [2] - 15:25, 18:8
**orderly** [7] - 19:10,
27:4, 28:13, 29:11,
29:12, 30:23, 30:24
**otherwise** [1] - 6:12
**overall** [2] - 16:6, 16:8
**OWEN** [1] - 1:6
**Oxnard** [1] - 1:17

**P**

**P.C** [1] - 1:17
**P.D** [2] - 7:23, 8:2
**P.G** [6] - 3:22, 11:7,
12:15, 12:23, 14:5,
14:9
**p.m** [11] - 7:24, 8:3,
20:13, 31:25, 34:13,
43:24, 54:14
**page** [3] - 2:21, 6:16,
17:16
**paper** [2] - 29:3, 29:18
**paragraph** [1] - 22:13
**part** [2] - 8:7, 21:21
**parties** [7] - 2:6, 6:17,
6:21, 6:22, 32:3,
35:25, 51:9
**parties'** [2] - 20:16,
26:22
**password** [8] - 28:15,
28:16, 28:17, 28:19,
29:2, 31:2, 31:3,
31:4
**patience** [1] - 53:12
**Pause** [3] - 14:19,
33:21, 52:19
**Pennsylvania** [5] -
13:14, 35:4, 35:8,
35:9, 35:13
**people** [4] - 11:16,
38:15, 38:25, 51:13
**per** [1] - 44:8
**period** [2] - 27:6, 34:8
**person** [4] - 9:19,
22:11, 23:10, 26:16
**personal** [5] - 23:24,
32:25, 38:19, 40:20,
52:1
**perspective** [1] -
34:10
**physical** [14] - 14:22,
15:17, 17:1, 17:3,
17:6, 17:24, 20:1,
22:10, 23:8, 23:18,
23:19, 23:22, 24:3,
30:12
**physically** [1] - 19:25
**piece** [2] - 29:3, 29:18
**piecing** [1] - 7:15
**PIERCE** [58] - 1:16,
2:13, 8:15, 10:12,
10:22, 11:2, 11:11,
12:10, 12:19, 13:3,
15:1, 15:4, 15:10,
17:5, 17:12, 19:21,
20:5, 20:18, 23:15,
24:15, 24:23, 25:1,
26:9, 26:11, 27:6,
27:9, 27:15, 29:16,

30:5, 31:16, 31:19,
32:18, 33:4, 34:11,
34:21, 36:14, 36:25,
37:4, 37:14, 37:17,
37:23, 38:8, 39:10,
39:15, 41:18, 43:6,
44:15, 45:11, 46:8,
47:1, 47:14, 48:13,
49:6, 49:25, 51:2,
51:16, 52:23, 54:12
**Pierce** [1] - 1:17,
2:13, 8:14, 13:2,
23:14, 26:8, 31:18,
33:3, 37:22, 39:9,
41:17
**Plaintiff** [1] - 1:4
**plan** [2] - 31:18, 32:7
**planning** [1] - 45:4
**plans** [11] - 43:3,
43:19, 44:22, 44:25,
45:18, 45:20, 46:17,
47:10, 49:22, 50:9,
51:18
**played** [1] - 6:19
**podium** [1] - 2:6
**point** [4] - 11:4, 33:1,
38:4, 52:9
**Police** [13] - 3:22,
3:23, 5:17, 11:7,
12:15, 12:16, 12:23,
14:5, 14:6, 14:9
**police** [2] - 4:1, 4:12
**portion** [1] - 5:24, 7:9
**portions** [2] - 5:19,
7:16
**position** [6] - 4:20,
6:4, 25:10, 37:13,
38:12, 51:20
**positions** [1] - 20:16
**possibility** [2] - 33:25,
34:4
**possible** [1] - 32:13
**potential** [1] - 38:4
**prefer** [1] - 39:12
**preference** [1] - 3:8
**preliminarily** [1] -
19:23
**preliminary** [1] - 19:20
**present** [7] - 2:2, 2:14,
3:17, 9:1, 15:24,
22:2, 32:1
**pressure** [3] - 37:20,
39:7, 43:9
**pressured** [1] - 38:2,
39:23, 41:22
**presumably** [1] -
38:20
**pretty** [3] - 25:18,
26:3, 51:17
**Prince** [1] - 5:17

**problematically** [1] -
21:7
**Proceedings** [2] -
1:24, 54:14
**proceedings** [1] - 55:4
**produced** [1] - 1:25
**promise** [1] - 54:5
**property** [1] - 23:25
**proposal** [1] - 25:16
**propose** [3] - 19:2,
27:19, 39:3
**proposed** [1] - 5:3
**provenance** [1] -
12:12
**provide** [2] - 25:14,
31:4
**provided** [1] - 29:2
**prudent** [1] - 39:7
**public** [1] - 21:5
**pulling** [1] - 4:22
**purchased** [1] - 40:25
**purpose** [18] - 26:6,
26:9, 26:11, 26:12,
26:16, 27:4, 27:7,
27:11, 27:13, 27:21,
28:6, 28:11, 28:12,
29:8, 29:10, 30:21,
30:23, 40:1
**purposes** [19] - 3:21,
11:6, 14:4, 14:21,
16:13, 17:18, 17:21,
17:23, 19:5, 22:19,
22:24, 24:3, 26:2,
26:24, 27:2, 27:19,
27:22, 30:11, 30:17
**put** [1] - 39:19
**putting** [1] - 12:9

**Q**

**questioning** [1] -
24:14
**questions** [21] - 39:20,
41:16, 41:18, 43:1,
43:6, 44:13, 44:15,
45:9, 46:6, 46:24,
47:12, 48:12, 48:13,
49:5, 49:6, 49:24,
49:25, 51:1, 51:2,
53:19, 54:1
**quick** [1] - 39:20
**quote** [1] - 21:2

**R**

**raised** [4] - 22:22,
22:25, 32:24, 53:18
**rather** [1] - 25:2
**rea** [1] - 20:6
**reach** [1] - 32:6

**reached** [1] - 7:1
**read** [9] - 5:20, 6:1, 6:3, 11:5, 11:23, 16:3, 22:17, 23:6, 29:1
**reading** [2] - 9:2, 19:23
**reads** [3] - 3:21, 14:4, 30:17
**ready** [1] - 20:12
**reaffirming** [1] - 11:15
**real** [3] - 23:24, 34:3
**really** [2] - 33:13, 50:12
**reasonable** [5] - 16:1, 18:9, 22:5, 22:11, 23:10
**reasons** [1] - 38:19
**received** [1] - 11:6
**Recess** [4] - 3:16, 8:25, 20:13, 31:25
**recognizing** [1] - 24:6
**recommendation** [2] - 27:16, 36:13
**record** [9] - 2:7, 6:17, 7:12, 7:16, 7:19, 7:20, 8:20, 36:10, 55:4
**recorded** [1] - 1:24
**redundant** [1] - 9:24
**refer** [2] - 10:11, 18:13
**referenced** [1] - 5:25
**referencing** [2] - 5:21, 19:11
**referring** [1] - 10:15
**refrain** [3] - 45:12, 47:15, 53:24
**regular** [1] - 41:10
**regulates** [1] - 21:5
**rejected** [1] - 22:22
**related** [1] - 31:5
**released** [1] - 35:11
**relevant** [1] - 7:6
**relieved** [1] - 32:9
**reluctant** [1] - 33:19
**remainder** [3] - 42:15, 43:17, 46:17
**remember** [2] - 40:1, 41:2
**reminds** [1] - 22:21
**repeat** [2] - 10:2, 12:22
**Reporter** [1] - 2:21
**REPORTER** [3] - 22:7, 55:1, 55:9
**representation** [1] - 8:5
**request** [1] - 24:7
**require** [3] - 17:8, 26:21, 43:3

**required** [1] - 26:1
**requires** [1] - 15:13
**rescheduled** [1] - 52:11
**research** [3] - 19:3, 19:15, 20:21
**resist** [1] - 18:14
**resisting** [1] - 10:17
**respect** [1] - 11:3
**respectfully** [1] - 10:23
**response** [1] - 18:12
**responsive** [1] - 11:2
**rest** [1] - 27:21
**resume** [1] - 38:7
**return** [5] - 13:9, 30:3, 40:18, 44:1, 48:6
**returning** [2] - 43:25, 46:1
**reversed** [1] - 6:7
**reversing** [1] - 15:6
**review** [2] - 3:19, 7:4
**ROGER** [1] - 1:16
**Roger** [1] - 2:14
**room** [4] - 3:5, 14:13, 45:13, 46:10
**Room** [1] - 1:22
**ROOTS** [15] - 1:16, 2:19, 3:2, 3:9, 4:4, 4:7, 4:10, 4:14, 4:19, 6:5, 8:6, 8:12, 8:23, 15:7, 15:11
**Roots** [9] - 2:14, 4:16, 6:7, 6:11, 6:13, 7:12, 8:11, 23:14, 41:17
**rough** [1] - 7:13
**roughly** [1] - 7:9
**RPR** [1] - 1:21
**Rummens** [1] - 2:11

## S

**SAMANTHA** [1] - 1:13
**Samantha** [1] - 2:9
**Sara** [2] - 55:3, 55:8
**SARA** [1] - 1:21
**satisfied** [1] - 29:15
**satisfy** [3] - 28:13, 29:8, 30:21
**save** [1] - 31:10
**scale** [1] - 12:9
**schedule** [3] - 39:5, 41:8, 42:6
**scheduled** [2] - 45:22, 45:24
**schedules** [1] - 46:14
**scheduling** [1] - 36:19
**school** [1] - 45:23
**scratch** [2] - 13:16, 35:20

**screw** [1] - 51:18
**se** [1] - 44:8
**Sean** [1] - 2:10
**SEAN** [1] - 1:13
**seat** [1] - 14:16
**Second** [1] - 28:16
**second** [14] - 7:9, 9:24, 18:24, 19:4, 24:11, 27:2, 27:17, 28:5, 28:14, 28:20, 29:8, 30:4, 30:17, 30:21
**section** [1] - 16:6
**Section** [1] - 16:8
**see** [10] - 5:4, 22:12, 22:16, 31:14, 31:23, 32:11, 33:8, 40:3, 40:21, 42:6
**seeing** [1] - 27:24
**seizure** [1] - 25:2
**send** [1] - 6:20
**sense** [12] - 12:1, 12:21, 13:12, 18:19, 18:25, 33:7, 37:18, 43:17, 46:14, 47:7, 47:22, 50:7
**sensibility** [2] - 22:11, 23:10
**sentence** [1] - 10:23
**sentiment** [1] - 38:14
**separate** [1] - 23:2
**separately** [1] - 8:1
**serious** [2] - 37:11, 51:18
**seriously** [1] - 36:20
**service** [2] - 35:11, 36:16
**session** [3] - 19:11, 29:11, 30:24
**set** [2] - 4:23, 5:1
**Seventh** [1] - 25:5
**share** [1] - 19:4
**sheet** [1] - 8:13
**short** [1] - 34:8
**shorthand** [1] - 1:24
**shower** [1] - 49:18
**side** [3] - 3:12, 26:4, 36:13
**sides** [5] - 3:25, 24:9, 26:13, 26:23, 29:15
**sign** [4] - 2:22, 3:13, 8:17, 14:17
**SIGNATURE** [1] - 55:9
**signatures** [1] - 2:22
**signed** [2] - 6:21, 14:21
**similar** [4] - 21:13, 21:15, 24:19, 37:10
**simple** [3] - 4:4, 4:7, 24:9

**simply** [1] - 27:1
**sit** [3] - 3:10, 5:8, 5:10
**situation** [2] - 34:3, 51:5
**Sixth** [1] - 25:5
**slightly** [1] - 24:7
**Slow** [1] - 22:7
**small** [5] - 22:10, 22:18, 23:4, 23:6, 23:9
**sole** [2] - 11:11, 12:12
**someone** [3] - 15:23, 18:4, 22:1
**somewhere** [2] - 20:7, 45:7
**sorry** [5] - 5:9, 13:16, 16:6, 16:23, 35:3
**Sorry** [1] - 22:8
**sort** [3] - 7:15, 20:6, 37:17
**sorted** [1] - 7:18
**sorts** [2] - 37:10, 40:15
**sounded** [1] - 51:19
**sounds** [2] - 36:15, 41:23
**Southwest** [1] - 41:3
**speaking** [7] - 42:5, 43:16, 44:21, 45:18, 46:13, 47:6, 49:15
**specific** [7] - 24:12, 24:21, 25:7, 25:9, 25:20, 25:21, 26:21
**specifically** [7] - 5:18, 6:2, 18:13, 20:24, 20:25, 21:23, 22:22
**speed** [1] - 38:10
**staff** [1] - 36:1
**stamp** [5] - 7:14, 7:24, 8:2
**stand** [1] - 39:19
**standard** [1] - 25:19
**standing** [1] - 40:11
**start** [10] - 3:4, 3:5, 3:7, 13:15, 13:17, 16:7, 33:18, 35:20, 37:8, 39:17
**starting** [1] - 2:7
**state** [4] - 7:18, 7:20, 25:9, 28:7
**STATES** [3] - 1:1, 1:3, 1:10
**States** [31] - 1:13, 1:14, 2:4, 2:10, 3:23, 3:24, 4:2, 4:12, 4:13, 4:18, 9:18, 9:19, 9:21, 10:7, 10:8, 11:8, 11:9, 12:5, 12:6, 12:16, 12:17, 12:18, 12:24, 12:25,

14:6, 14:7, 14:10, 14:11, 21:16
**status** [1] - 3:19
**statute** [15] - 5:19, 5:25, 6:9, 15:21, 17:4, 17:10, 18:23, 20:25, 21:1, 21:6, 21:13, 22:24, 25:7, 26:2
**statutes** [1] - 21:4
**statutory** [1] - 5:14
**stay** [5] - 13:17, 13:20, 14:18, 32:4, 51:13
**staying** [1] - 42:24
**stenotype** [1] - 1:24
**step** [5] - 12:6, 36:7, 41:20, 43:7, 52:4
**still** [3] - 32:4, 51:13, 53:2
**straight** [1] - 12:11
**Street** [2] - 1:14, 1:17
**strikes** [1] - 19:24
**subject** [1] - 19:21
**subsections** [1] - 6:2
**Sunday** [1] - 46:2
**supposed** [5] - 40:16, 47:24, 50:13, 50:17, 50:18
**surface** [1] - 38:5
**surplusage** [1] - 10:23

## T

**tack** [1] - 38:25
**tacking** [1] - 38:16
**tarp** [1] - 8:8
**telephones** [1] - 39:25
**ten** [4] - 7:9, 39:5, 42:6, 44:22
**ten-second** [1] - 7:9
**tend** [2] - 23:21, 34:12
**term** [15] - 14:23, 15:18, 17:1, 17:2, 17:25, 18:1, 18:3, 19:13, 21:25, 23:21, 24:4, 28:11, 29:7, 30:12, 30:20
**terms** [1] - 37:5
**terrific** [1] - 47:11
**THE** [233] - 1:1, 1:1, 1:9, 2:12, 2:15, 2:20, 3:3, 3:11, 3:18, 4:6, 4:8, 4:11, 4:16, 4:20, 5:1, 5:6, 5:9, 5:11, 5:13, 5:22, 6:4, 6:7, 7:4, 7:11, 7:20, 8:4, 8:11, 8:14, 8:16, 8:22, 8:24, 9:2, 9:6, 9:12, 9:25, 10:4, 10:13, 10:19, 10:25,

11:5, 11:17, 11:20,
11:25, 12:8, 12:13,
12:22, 13:4, 13:6,
13:14, 13:23, 14:1,
14:16, 14:20, 15:2,
15:6, 15:8, 15:16,
16:10, 16:12, 16:17,
16:21, 16:25, 17:9,
17:14, 17:20, 18:14,
18:18, 18:22, 19:2,
19:19, 20:2, 20:7,
20:14, 21:8, 21:11,
21:19, 22:12, 22:21,
23:1, 23:11, 23:14,
23:21, 24:21, 24:25,
25:3, 25:13, 25:16,
25:20, 26:4, 26:10,
26:13, 27:8, 27:13,
27:16, 27:22, 28:2,
28:10, 28:22, 29:1,
29:6, 29:18, 29:22,
30:6, 30:9, 31:13,
31:17, 31:21, 31:23,
32:2, 32:20, 33:5,
33:10, 33:15, 33:22,
34:5, 34:13, 34:23,
34:25, 35:2, 35:6,
35:8, 35:10, 35:14,
35:22, 36:7, 36:10,
36:23, 37:1, 37:6,
37:16, 37:21, 38:2,
38:9, 38:18, 39:3,
39:9, 39:13, 39:17,
40:3, 40:8, 40:10,
40:12, 40:14, 40:18,
40:20, 40:22, 40:25,
41:5, 41:8, 41:11,
41:14, 41:17, 41:19,
41:24, 42:2, 42:4,
42:9, 42:11, 42:15,
42:21, 42:24, 43:1,
43:7, 43:11, 43:14,
43:16, 43:22, 43:24,
44:2, 44:4, 44:6,
44:9, 44:11, 44:13,
44:16, 44:21, 45:4,
45:8, 45:12, 45:17,
45:24, 46:1, 46:3,
46:6, 46:9, 46:13,
46:21, 46:23, 47:2,
47:6, 47:11, 47:15,
47:19, 47:21, 47:25,
48:2, 48:4, 48:6,
48:8, 48:10, 48:14,
48:17, 48:19, 48:24,
49:1, 49:4, 49:8,
49:12, 49:14, 49:19,
49:21, 49:24, 50:1,
50:4, 50:6, 50:16,
50:19, 50:22, 50:24,
51:5, 51:20, 51:23,

52:5, 52:10, 52:14,
52:18, 52:22, 52:24,
53:8, 53:11, 53:21,
54:10, 54:13
**therefore** [2] - 29:8,
30:21
**they've** [3] - 10:16,
33:22
**thinking** [2] - 9:5, 53:3
**Third** [1] - 1:18
**third** [2] - 29:18, 31:3
**Thomas** [2] - 2:5, 2:14
**THOMAS** [1] - 1:6
**thoughts** [2] - 24:15,
33:6
**threat** [5] - 15:15,
15:23, 17:7, 18:4,
23:23
**threaten** [4] - 16:2,
18:11, 22:9, 22:14
**threatened** [2] - 18:6,
18:7
**three** [3] - 8:21, 51:14,
52:6
**Thursday** [18] - 32:9,
32:11, 32:22, 32:25,
33:14, 34:7, 35:11,
35:12, 36:4, 36:6,
36:16, 38:20, 40:15,
40:16, 50:13, 50:14,
51:7, 52:1
**tickets** [1] - 41:1
**tied** [1] - 23:19
**time-of-day** [1] - 7:24
**tired** [1] - 49:13
**title** [6] - 16:10, 16:11,
19:1, 21:8, 21:10,
21:11
**Title** [5] - 16:15, 18:21,
21:4, 21:6, 21:9
**titles** [1] - 18:13
**today** [8] - 14:3, 14:20,
33:23, 34:6, 34:15,
34:18, 53:4, 53:15
**together** [1] - 7:16
**tomorrow** [13] - 13:11,
32:8, 32:9, 32:12,
32:23, 33:15, 34:6,
35:4, 35:11, 36:4,
36:5, 36:16, 52:15
**tomorrow's** [1] - 52:12
**ton** [1] - 20:21
**tonight** [1] - 35:9
**top** [1] - 40:4
**totally** [2] - 38:8, 43:2
**touching** [3] - 22:11,
22:19, 23:9
**TRANSCRIPT** [1] - 1:9
**Transcript** [1] - 1:25
**transcript** [4] - 6:24,

7:4, 8:6, 55:4
**transcription** [1] -
1:25
**travel** [10] - 43:3,
43:19, 44:25, 45:20,
46:17, 47:9, 47:24,
49:22, 49:23, 51:18
**treat** [7] - 3:22, 4:1,
9:6, 9:7, 11:7, 11:15,
14:5
**trial** [1] - 45:5
**TRIAL** [1] - 1:9
**trip** [3] - 32:25, 40:20,
52:1
**try** [2] - 39:21, 47:8
**trying** [3] - 6:9, 18:14,
46:16
**Tuesday** [18] - 38:16,
38:22, 39:2, 41:9,
44:1, 44:2, 44:7,
50:15, 50:16, 51:10,
51:11, 51:17, 52:21,
53:5, 53:15, 53:20,
53:21, 54:2
**turning** [1] - 21:3
**two** [16] - 6:18, 6:22,
7:1, 7:18, 8:16, 8:17,
9:14, 9:15, 12:4,
23:2, 25:13, 33:11,
38:7, 51:14, 51:19
**typically** [1] - 25:18

## U

**U.S** [2] - 21:2, 26:14
**U.S.C** [8] - 5:14, 5:25,
6:2, 16:8, 18:17,
20:22, 21:1, 21:4
**unexpected** [6] - 41:5,
42:4, 42:8, 44:23,
45:19, 46:15
**UNITED** [3] - 1:1, 1:3,
1:10
**United** [31] - 1:13,
1:14, 2:4, 2:10, 3:23,
3:24, 4:2, 4:12, 4:13,
4:18, 9:18, 9:19,
9:21, 10:7, 10:8,
11:8, 12:5, 12:16,
12:17, 12:24, 12:25,
14:6, 14:7, 14:10,
14:11, 21:16
**unless** [1] - 18:13
**unlikely** [1] - 30:4
**up** [18] - 4:23, 8:7,
13:17, 17:22, 20:14,
31:6, 31:17, 38:10,
38:16, 39:21, 42:5,
44:24, 44:25, 46:16,
48:21, 50:11, 51:18,

52:8
**upcoming** [1] - 45:18
**upset** [2] - 36:11,
36:15
**upsetting** [1] - 36:18

## V

**verb** [1] - 10:18
**verbs** [2] - 10:10,
27:21
**verdict** [5] - 32:6,
34:18, 53:6, 53:9,
53:24
**verdicts** [1] - 34:2
**versed** [1] - 33:24
**version** [2] - 16:22,
16:24
**versus** [1] - 2:4
**video** [3] - 6:19, 8:7,
8:9
**view** [9] - 6:7, 14:25,
15:1, 20:17, 36:13,
36:14, 36:19, 36:25,
51:16
**views** [1] - 30:1
**violence** [11] - 15:13,
15:14, 15:17, 15:18,
17:2, 17:3, 17:6,
23:18, 23:19, 23:22
**violence'** [4] - 14:22,
17:24, 24:4, 30:12
**voice** [1] - 15:8
**VOLUME** [1] - 1:9
**voluntarily** [4] - 19:14,
20:4, 20:9, 26:18
**vs** [1] - 1:5

## W

**wait** [3] - 34:18, 35:22,
37:7
**waiting** [2] - 14:17,
45:6
**wants** [3] - 32:25,
33:16, 36:11
**warmed** [1] - 17:22
**warming** [1] - 31:6
**Washington** [3] - 1:5,
1:15, 1:22
**water** [1] - 45:7
**ways** [1] - 9:3
**wedded** [1] - 10:4
**Wednesday** [6] -
33:13, 39:2, 48:22,
49:1, 51:6, 52:13
**week** [40] - 35:23,
37:3, 37:10, 38:5,
38:14, 39:2, 40:2,
41:9, 41:12, 42:15,

42:16, 43:18, 43:20,
44:11, 45:1, 45:20,
45:21, 46:3, 46:4,
46:18, 47:7, 47:8,
47:22, 48:20, 48:24,
49:2, 49:16, 49:22,
50:7, 53:3, 53:18,
53:25
**weekend** [13] - 38:15,
38:20, 38:25, 39:1,
43:21, 44:23, 45:19,
46:15, 47:8, 47:23,
50:8, 51:19, 54:8
**weeks** [1] - 46:21
**welcome** [1] - 30:9
**well-versed** [1] - 33:24
**Westlaw** [2] - 6:10
**whatsoever** [1] -
33:25
**whereas** [2] - 15:14,
24:23
**whole** [5] - 5:20, 6:1,
37:9, 37:10, 40:11
**Wick** [3] - 7:14, 55:3,
55:8
**WICK** [1] - 1:21
**witness** [1] - 39:19
**WL** [1] - 21:2
**wonder** [1] - 51:9
**Woodland** [1] - 1:18
**word** [8] - 15:20,
17:12, 18:20, 23:17,
26:2, 27:25, 28:2,
28:4
**words** [1] - 27:11
**works** [2] - 21:5, 51:17
**worn** [2] - 7:23, 8:1

## Y

**year** [1] - 37:24
**yourselves** [2] - 2:7,
15:6